462 P.2d 829

**CITY OF PHOENIX, a municipal corporation, and W. Eugene Scott, Petitioners,**

v.

**The Honorable Howard V. PETERSON, Judge of the Superior Court of Maricopa County, State of Arizona; Tony Dauksis and Georgiana Dauksis, husband and wife, Respondents.**

No. 1 CA–CIV 1223.

Court of Appeals of Arizona, Division 1.

Department B.

Dec. 18, 1969.

O'Connor, Cavanagh, Anderson, Westover Killingsworth & Beshears, by Ralph E. Mahowald, Jr., Phoenix, for petitioners.

Green & Berman, by David M. Berman, Phoenix, for Tony Dauksis and Georgiana Dauksis.

PER CURIAM:

The City of Phoenix and one of its policeman-employees, William Eugene Scott, petitioners, seek issuance of an original writ of prohibition to prevent enforcement of certain portions of a subpoena duces tecum directed to the Custodian of Records of the Phoenix Police Department, the deponent in a pretrial discovery proceeding in an action pending in the Superior Court. The petitioners, defendants in the trial court, contend that the Custodian should not be required to produce two classes of documents: (1) Police Department records of reprimands or disciplinary proceedings involving Officer Scott; (2) recorded statements by other police officers who were present during the allegedly tortious event in question. We will, for convenience, consider the two classes of documents separately.

## RECORD OF DISCIPLINARY PROCEEDINGS

The petitioners are defendants in an action commenced in the Superior Court by Tony and Georgiana Dauksis, the respondent real parties in interest. The Dauksis' complaint, as capsulized by the petitioners here, charges "false arrest, false imprisonment, malicious prosecution and assault and battery," all arising out of an incident in which Officer Scott took the respondent Tony Dauksis into custody. While the complaint does not in explicit terms set forth the basis for imposing liability on the City of Phoenix, the employment relationship of Officer Scott is alleged and admitted and the principle of respondeat superior is apparently assumed by both parties to be the only basis in the complaint for such liability.

The respondent-plaintiffs (hereinafter plaintiffs) served a set of interrogatories upon petitioners. One of the interrogatories, No. 105, sought the following information:

"105. Were any complaints ever made against William Scott in his capacity as a police officer of the City of Phoenix?

a) If so, describe in detail the complaint and by whom made.

b) Were any disciplinary proceedings brought against William Scott by the Phoenix Police Department?

c) What was the nature of the proceedings?

d) What was the result of these proceedings?"

This interrogatory was answered by the petitioners jointly in the following manner:

"105. There have been no complaints made against Officer Scott by citizens of the City of Phoenix. From 1962 through the present Officer Scott has received several reprimands for sundry reasons none of which are material or relevant to this lawsuit or to the issues in this lawsuit."

Thereafter, plaintiffs gave notice that they would take the deposition of the Custodian of Records. The subpoena duces tecum here in question was served upon the Custodian, commanding him to produce at the deposition the complete departmental record of reprimands and disciplinary proceedings involving Officer Scott. The petitioners moved for a protective order or to quash the subpoena, asserting privilege and lack of good cause. Plaintiffs had not at the time taken the deposition of Officer Scott, and they did not file an affidavit setting forth their reasons for seeking production of the records. At the hearing on petitioners' motion, however, counsel for plaintiffs stated that he wished to see the record of disciplinary proceedings in order to help ascertain whether the complaint should be amended to state an independent cause of action against the City of Phoenix, based upon a charge of negligence in maintaining an allegedly unfit police officer. Counsel also pointed out in this connection that certain answers by Officer Scott to the interrogatories revealed that he had been engaged in two unofficial altercations, one prior to the incident which is the subject of plaintiffs' complaint.

The trial judge denied petitioners' motion, thus setting the stage for the original application now before us.[1] Plaintiffs subsequently took the deposition of Officer Scott. The deposition is not presently available, but in an affidavit filed in this court, counsel for plaintiffs states that Officer Scott was able to recall the details of only two out of "several" reprimands. Two days after the hearing in that trial court plaintiffs filed a motion to amend their complaint to add a Count Three alleging that the City of Phoenix " * * * knew or had reason to know that William

Eugene Scott was unfit to be employed * * * as a police officer * * *", and that City of Phoenix was " * * * grossly negligent in failing to terminate the employment relationship * * *" which allegedly placed Scott in a position to act maliciously, oppressively, and wrongfully toward the plaintiffs. The trial court had not passed upon the motion to amend the complaint at the time the cause was submitted to us.

■ This court has the power to issue a writ of prohibition to prevent enforcement of an unauthorized and nonappealable discovery order. Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958); Kirkpatrick v. Industrial Commission, 10 Ariz.App. 564, 460 P.2d 670 (filed November 10, 1969). The power, however, is to be exercised only in "rare" cases, as a matter of sound discretion according to the nature and circumstances of the case. Zimmerman v. Superior Court, 98 Ariz. 85, 87, 402 P.2d 212, 213 (1965).

■ Privilege and lack of "good cause shown" are the issues raised by petitioners with respect to the disciplinary records. On the question of privilege, petitioners have in their argument laid heavy stress on the confidential nature of "personnel files" in general and police personnel files in particular. This argument is too broad, however, both for the authorities that petitioners rely upon,[2] and for the facts of this case. While we have found some authority which alludes to the confidential nature of personnel files,[3] there is no occasion for us to determine in this case whether personnel files generally may or may not have a privileged status, because the plaintiffs here do not seek production of the Police Department's "personnel file" on Officer

---

1. The Custodian appeared at the taking of his deposition, as scheduled, prior to presentation of the matter in this Court, but on the advice of counsel did not produce the records here in question, pending our disposition of the present application.

2. State ex rel. Douglas v. Tune, 199 Mo. App. 404, 203 S.W. 465 (1918); City

Council of City of Santa Monica v. Superior Court, 204 Cal.App.2d 68, 21 Cal. Rptr. 896 (1962); Minneapolis Star and Tribune Co. v. State, 282 Minn. 86, 163 N.W.2d 46 (1968).

3. Board of Trustees of Calaveras Unified School District v. Leach, 258 Cal.App.2d 281, 65 Cal.Rptr. 588, 593 (1968).

Scott as such. They seek only a record of disciplinary proceedings. While petitioners state that these records are part of the Department's personnel file on Officer Scott, there is no suggestion that it is an inseparable part.

There is no statute in Arizona which establishes a privilege for official documents. Udall and Wigmore would, generally at least, deny a common law privilege for such documents unless they rise to the level of "secrets of state." Udall, Arizona Law of Evidence (1960), Section 102, at 187[4]; 8 Wigmore on Evidence (MacNaughton Rev.1961), Section 2378. McCormick, on the other hand, states his belief that most American courts would adopt the English view that a privilege will be found to exist independent of statute whenever disclosure would be injurious to the public interest. McCormick, Evidence (1954), Section 144, at 303–304.

A measure of privilege was recognized for official documents in Arizona in Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893 (1952). The petitioner in mandamus in *Mathews* was the editor of a newspaper, seeking the right to inspect a report by the attorney general to the governor. Our Supreme Court held that the editor could see the report " * * * unless they [the documents comprising the report] are confidential or of such a nature that it would be against the best interests of the state to permit a disclosure of their contents." 75 Ariz. at 80, 251 P.2d at 896. The court also held that a final determination of the existence of the privilege claimed would be by the court in a "private examination."

Granting that the records in question here are confidential, as against the public at large, we do not think that the rule in *Mathews* can be applied in a manner which would bar production of at least their essence here. The gravamen of petitioners' public policy argument, in reliance upon the authorities set forth in footnote 2, supra, is

that the names of any persons who may have communicated confidentially with police officials in connection with a disciplinary or similar matter should be kept secret. We note in that regard that plaintiffs' counsel has indicated before us that plaintiffs are not interested in ascertaining the identity of any complainants, but only the fact, nature, and outcome of disciplinary proceedings. Given these circumstances, we find commendable the result reached in Minneapolis Star and Tribune Co. v. State, 282 Minn. 86, 163 N.W.2d 46 (1968), cited by petitioners, in which it was held that one seeking information concerning disciplinary proceedings involving a doctor before a state medical board could have access to records showing the cause, nature and disposition of the disciplinary proceedings, but not to materials showing confidential communications from patients or other informants or to board minutes reflecting board deliberations. The trial judge was given authority to supervise the inspection in the event of any dispute. We see no reason why the same principles could not be applied here, affording the City the right to delete in some manner any references to confidential communicants, and if necessary other irrelevant portions of the attached personnal file, subject to court supervision in the event of dispute.

We turn now to good cause. Petitioners correctly point out that the requirement of good cause, though not stated as in Rule 34 of our Rules of Civil Procedure, 16 A.R.S., is read into the subpoena provisions of Rule 45. State Farm Ins. Co. v. Roberts, 97 Ariz. 169, 177–178, 398 P.2d 671, 676 (1965). Petitioners preliminarily point to plaintiffs' failure to file any affidavit showing good cause in the trial court. The filing of an affidavit which demonstrates in specific terms the reasons why good cause exists for production of a document or thing is often if not usually essential and is always the better practice. See 4,

4. Udall states: "It is a general principle of law that the courts are entitled to have made available the testimony and documentary evidence possessed by any person. Government agencies are not ordinarily excepted and have no privilege to refuse to produce evidence unless a statute has specifically created an exemption."

Moore's Federal Practice (1966 rev.), Sec. 34.07, note 6, at 2456–2457. However, if good cause can otherwise be shown, production will not be denied merely for lack of a verified statement of need. See, e. g., Rekeweg v. Federal Mutual Ins. Co., 27 F.R.D. 431, 437 (N.D.Ind. 1961).

Petitioners' basic contention seems to be that plaintiffs' stated aim for obtaining the records—to aid in ascertaining whether their complaint should be amended to state an additional claim—cannot constitute and even negates a showing of good cause. We have not found in petitioners' citations or in our own limited research any authority which would support such a proposition. One reason may be that the proposition appears to confuse to some extent the separate concepts of *relevancy* and *good cause*.

 Under the provisions of Rule 26(b), which define the pertinent scope of examination, a person may be examined with respect to " * * * any matter * * which is relevant to the subject matter involved in the pending action * * *." This "subject matter" test of relevancy is "broader than the precise issues presented by the pleadings." Kaiser-Frazer Corp. v. Otis & Co., 11 F.R.D. 50, 53 (S.D.N.Y. 1951), quoted in 4, Moore's Federal Practice (1962 rev.), Sec. 26.16 [1], at 1176–1177. It is noteworthy that a requirement in the original Federal Rule and our own Rule 34 that an item sought to be produced be "material to any matter involved in the action" was deleted from the Federal Rule in 1946 and from our own Rule in 1949. "Good cause", on the other hand, is a separate and additional limitation on the operation of Rules 34 and 45. See Schlagenhauf v. Holder, 379 U.S. 104, 117–118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152, 163 (1964), and cases cited. Alternative availability of the information sought is often a critical issue in regard to good cause. Good cause depends upon the particular circumstances of each case and considerations of practical convenience are important. State Farm Ins. Co. v. Roberts, supra. The trial judge has some discretion in determining the matter. Connolly v. Great Basin Ins.

Co., 6 Ariz.App. 280, 288, 431 P.2d 921, 929 (1967).

 We agree with petitioners to the extent that an *original* complaint must *always* precede discovery. Neither Rule 26 and the other discovery rules for which it defines the scope of inquiry nor Rule 27 concerning the perpetuation of testimony may be used to "discover a cause of action" and frame an original complaint. See Pike and Willis, "The New Federal Deposition-Discovery Procedure: I", 38 Columbia Law Review 1179, at 1192–1193 (1938); Petition of Ferkauf, 3 F.R.D. 89 (S.D.N.Y. 1943). A "skeleton complaint" must first be filed. 4, Moore's Federal Practice (1968 rev.), Sec. 27.07 [4], page 1828.

Here, by petitioners' own description, plaintiffs have already alleged a four-pronged cause of action against the City of Phoenix. As to these existing causes of action, plaintiffs suggest that the records in question might possibly show a "propensity to assault" on the part of the individual defendant. Relying upon information secured by interrogatories, counsel for plaintiffs stated the gist of the possible additional claim for negligent maintenance of an officer in the hearing on good cause before the trial court. Asked by the trial judge if such a claim would present a tenable theory of recovery, petitioners' counsel declined to assert the negative, stating that " * * * in this day and age I can see that any cause of action is possible." Plaintiffs have now in fact moved to amend their complaint in the manner previously suggested. Rule 15(a) requires that leave to amend pleadings be freely granted when justice requires.

 On the existing pleadings, we have a close question on relevancy and good cause. We see no need to determine the issue. Under all of the circumstances before us here, we feel that our decision should be guided by the discretionary nature of the relief sought in this court. The *Zimmerman* case, supra, stands for the proposition that the remedy of prohibition should not be routinely granted.

A dominant purpose of our Rules of Civil Procedure is to facilitate discovery, and they are to be liberally construed to that end. 2 A, Barron and Holtzoff, Federal Practice and Procedure (1961), Sections 641, 792. The records sought are clearly relevant to the claim sought to be added by plaintiffs, and no alternative means to all of the information sought is apparent. Were we to grant extraordinary relief on this subject, our action could be (or may *have been,* for all we know) nullified as a practical matter by an order granting plaintiffs' motion to amend their complaint. This court will, in its discretion and where the case is otherwise appropriate, look with favor upon granting extraordinary relief in discovery matters when the entitlement is clear, when an important issue is at stake, or when the subsequent course of the litigation may be vitally affected by an erroneous order, notwithstanding the closeness of the question. But while petitioners' cause is presented here with commendably warm zeal, we are unable to find compelling reason, authority, or circumstances for exercising our power to overturn this portion of the discovery order which, if erroneous at all in its determination that good cause exists, has a sound basis in practicality.

What we have said with regard to the records applies only to disciplinary proceedings concerning events prior to the arrest incident which is in suit. We are unable to perceive any arguable good cause for production of records of any subsequent disciplinary proceedings, and they may be withheld.

## STATEMENTS OF OTHER POLICE OFFICERS

Petitioners concede that respondents are entitled to all statements of Officer Scott relating to the incident in question and statements of other officers which are contained in the official departmental report of the event. The controversy concerns subsequently recorded statements of officers who were present during the time the plaintiff Tony Dauksis was taken into custody or thereafter, but which are not in the official departmental report.

Plaintiffs' original complaint also named as co-defendants "John Does I through V", alleged to be police officers who were being sued by fictitious names until their true names could be ascertained and substituted. The names of the various officers who may have made statements are set forth in the subpoena addressed to the Custodian. While counsel for plaintiffs states again in this court that he intends to make some or all of these officers co-defendants, the proffered amended complaint prepared after the hearing in the trial court continues to list as defendants only petitioners and "John Does I through V." Plaintiffs have not taken the deposition of any of these other officers.

■ Our Supreme Court held in its comprehensive *Dean* opinion that production of statements by a witness will ordinarily not be ordered where the witness is available for examination, absent some other "good cause" such as a showing of hostility and an unwillingness to furnish information. 84 Ariz. at 113, 324 P.2d at 770. This court enforced this aspect of the *Dean* holding in Maricopa County v. Peterson, 7 Ariz.App. 363, 439 P.2d 526 (1968). The showing required by *Dean* has not been made here, and we think these authorities are clearly determinative of a lack of *present* good cause for production of the other officers' statements. Production of the statements for the purposes of determining credibility or impeachment may be appropriate after the officers have been examined by plaintiffs. State Farm Ins. Co. v. Roberts, supra.

## CONCLUSION

It is our opinion that the subpoena duces tecum is not enforceable to the extent that it: (1) purports to require production of disciplinary records concerning incidents subsequent to the one in suit and without the right of the City of Phoenix to delete the names of any persons who may have communicated confidentially with the Po-

 

lice Department in regard to a disciplinary matter; and (2) purports to require production of statements by officers other than Officer Scott which are not incorporated into the departmental report concerning the allegedly tortious incident. The subpoena is enforceable in all other respects.

The issuance of a mandate in this matter shall constitute the court's order requiring compliance with this opinion by the trial court.

EUBANK, P. J., and HAIRE and JACOBSON, JJ.