RICHARD TIGHE, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant,

BRUCE ELDON EDWARDS, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant,

RICKY N. LOVE, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant,

WOOD E. ALGER, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant,

CLIFFORD D. LARIOS, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant,

MICHAEL C. ROSSELL, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant,

MAVAEGA MAGA, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant.

NO. 5412

APRIL 4, 1974

RICHARDSON, C.J., KOBAYASHI and OGATA, JJ.,
CIRCUIT JUDGE HAWKINS IN PLACE OF LEVINSON, J.,
DISQUALIFIED, and CIRCUIT JUDGE FUKUSHIMA
ASSIGNED TEMPORARILY BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

This is an interlocutory appeal taken by the City and County of Honolulu (hereinafter sometimes: appellant) under an order of the circuit court granting such leave to appeal, and dated November 29, 1972. The appeal is from a circuit court order of November 1, 1972, in which the circuit court denied any absolute privilege for the police records of the City and County of Honolulu, and compelled the City and County to answer all the interrogatories filed by plaintiffs (appellees), including any and all such interrogatories the answers to which might or would require use of the records of the police department of the City and County of Honolulu.

Plaintiffs here are seven persons who filed seven separate complaints against the City and County of Honolulu, all alleging varying forms and degrees of assault against the persons of the individual plaintiffs by officers of the Honolulu Police Department. Seven sets of individual, but identical, interrogatories were filed by the seven plaintiffs. Objections were filed by appellant to interrogatories numbered 7, 8, 9, 10, 16, 17 and 18 within each set of these interrogatories, on the ground that answers thereto sought some information that was to be found only in the records of the police department. Because these seven cases had a common question of law, *i.e.*, the proper scope of the privilege for police records, if any, asserted by appellant, a stipulation for consolidation of the cases was entered into by counsel and approved by the circuit court.

I.

Appellant's contention is that there is, in the City and County of Honolulu, an *absolute* privilege, insulating from all disclosure, all police records, and that the privilege is based upon its charter section 12-110 and common law. For purposes of analysis of this contention, we consider in turn (a) the common law, and (b) the relevant charter provision of the City and County of Honolulu.

## (a) Common law

It has generally been held that there should be no absolute governmental privilege insulating police records from discovery (of their essence, if not of their entirety) in the absence specific statute granting such a privilege. *City of Phoenix v. Peterson,* 11 Ariz. App. 136, 462 P.2d 829 (1969); *Disabled Police Veterans Club v. Long,* 279 S.W.2d 220 (Mo. App. 1955);*Beckon v.Emery,* 36 Wis. 2d 510, 153 N.W.2d 501 (1967); *Re Story,* 159 Ohio St. 144, 111 N.E.2d 385 (1953).[1] Public interest in preservation of confidentiality and secrecy may be sufficient reason for insulation of police or other governmental records from discovery in special, individual cases, but such claims of privilege for such records on this basis require documentation and argument by the governmental agency asserting the privilege, and subsequent judicial evaluation of the claim of privilege.[2] Certainly no such claim has been made here. Also, it appears that none of the appellees have been or will be charged with any offense because of the incidents upon which their civil suits are based.

The reason for the rule that there is no blanket governmental privilege insulating police records from discovery, in the absence of a specific statute granting such a privilege, is as clear as is the majority trend. The rule is the result of the balancing of two conflicting policies and values, both recognized by the law as desirable. If the statements of those who make reports are subject to later discovery, there is admittedly created a tendency discouraging full and honest disclosure by any individual making such a report. On the other hand, such reports are apt to be, in many instances (such as

---

[1] This seems to be the majority rule. There are, however, a few cases to the contrary. *See, e.g., Whittle v. Munshower,* 221 Md. 258, 155 A.2d 670 (1959), *cert. den.,* 362 U.S. 981 (1960); *Kott v. Perini,* 283 F. Supp. 1 (1968), *questioned, Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344, fn. 8 (1973). One of the major cases claimed to be contrary is *Sapienza v. Paul,* 42 Haw. 14 (1957), as to which, see part II, *infra.*

[2] A specific procedure for resolution of this issue, as it may apply to requests for police records, was indicated by *Beckon v. Emery,* 36 Wis.2d 510, 516-17, 153 N.W.2d 501, 503-04 (1967). *See also, U.S. v. Reynolds,* 345 U.S. 1 (1953); *Nixon v. Sirica,* 487 F.2d 700 (D.C. Cir. 1973).

the particular case now before us), the most complete and accurate information available to a litigant. In some cases, such report may well be the *only* source of information which may lead to facts crucial to a plaintiff's cause of action against individual defendants and/or the governmental agency that has compiled and kept such records. The latter considerations have seemed to the courts more significant than the relatively weaker argument that it is possible that the accuracy of such reports might sometimes be impaired. Therefore, in the absence of a special legislative act creating a privilege for such governmental reports, there is no absolute privilege. McCormick, *Evidence* (2nd ed. 1972) § 112. 8 Wigmore, *Evidence* (McNaughton rev. 1961) § 2378, especially, fn. 7.

### (b) *Charter of the City and County of Honolulu*

Appellant argues that Section 12-110 of the Charter of the City and County of Honolulu[3] provides a blanket statutory privilege against discovery, applicable against plaintiffs in this case. We cannot agree. That section provides in full:

Section 12-110 Records and meetings open to public.

1. *All books and records of every agency of the city shall be open to the inspection of any citizen at any time during business hours.* Certified copies or extracts from such books and records shall be given by the officer having custody of the same to any person demanding the same, and paying or tendering a reasonable fee to be fixed by the council for such copies or extracts; *but the records of the police department or of the prosecuting attorney shall not be subject to such inspection unless permission is given by the chief of police or the prosecuting attorney,* except in the case of traffic accidents where such records, including all statements taken, shall after the

---

[3] Effective January 2, 1973, a revised Charter of the City and County of Honolulu took effect. Section 12-105 thereof is substantively identical to Section 12-110 of the former charter, except for deletion of part 2, and except for changes regarding traffic accident records, neither of which changes is here relevant. In any event, during argument of this case below, and at all times previous to the argument and pertinent to this appeal, the former charter was in effect. References in this opinion to the "Charter of the City and County of Honolulu" are therefore to the *former* charter.

termination of any criminal proceeding arising out of any such accident, or in any event after six months from the date of such accident, be available for inspection by the parties directly concerned in such accident or their duly licensed attorneys acting under written authority signed by either party. Any person who may sue because of death resulting from any such accident shall be deemed a party directly concerned.

2. All meetings of boards and commissions shall be held in the city hall or other public places and no such body shall take any official action except at a meeting open to the public. (Emphasis added.)

Appellant relies on the above italicized language.

We think that it is eminently clear that appellant's reliance is misplaced. The title and content of the section make it evident that the provision regulates only the *public* inspection and *public* observation, by any citizen, for any reason or *for no reason*, of the books and records of the city agencies during regular business hours. The section prohibits "such" *(public)* inspection of the records of the police department. On the other hand, plaintiff's interrogatories do not constitute "public inspection" forbidden by the terms of the charter provision. Law suits have been commenced, the allegations of which contain serious charges of personal injuries and of substantial damages resulting therefrom. Pursuant to their rights under Rule 33, *H. R. C. P.*,[4] plaintiffs served specific and detailed interrogatories on appellant. The very broad discovery specifically granted to litigants under the provisions of Rules 33(b) and 26(b) (1), H.R.C.P., cannot be said to be limited by the terms of a charter provision directed toward regulation of the entirely different situation of the general exploration of public records by any citizen during general business hours. Put another way, the use of proper interrogatories cannot be said to be within the plain meaning of this limited *"public* inspection" prohibition. There is no occasion for judicial construction of a statute where, as here, the statute is unambiguous in its terms. *20th*

[4] The *Hawaii Rules of Civil Procedure* have the force and effect of law. *Hawaii Constitution*, Article V, § 6.

*Century Furniture Inc. v. Labor and Industrial Relations Appeal Board,* 52 Haw. 577, 579-80, 482 P.2d 151, 152-53 (1971); *In Re Appeal of Harper,* 52 Haw. 313, 317, 475 P.2d 53, 55 (1970). "[A] statute should not be extended beyond the fair and reasonable meaning of its terms because of some supposed policy of the law." *Public Utilities Commission v. Narimatsu,* 41 Haw. 398, 401 (1956).

Since there is no valid common law rule ordinarily, insulating through privilege the records of the police department from discovery in a civil case, and since the cited charter provision is not controlling here, we hold that appellant has cited no valid reason for its failure to answer the interrogatories filed by appellees, and we therefore affirm the earlier lower court ruling that it do so.

II.

Considerable energy was expended by learned counsel in this case in argument about whether or not *Sapienza v. Chief of Police Paul, et al.,* 42 Haw. 14 (1957), controls and disposes of the issue in this case. The facts in that case[5] as well as one of the statutes involved prominently therein[6] are claimed to be sufficiently identical to their counterparts in this case so that distinctions between this case and *Sapienza*

---

[5] In *Sapienza,* attorney Maurice Sapienza had sought a writ of mandamus from the circuit court, third circuit, to compel Police Chief Paul of the County of Hawaii to permit attorney Sapienza to inspect "the records of convictions of crime and/or the police records not only of [2 named persons, his clients] but of every other adult male and female residing in said county of Hawaii." 42 Haw. at 15. The request was allegedly made to permit adequate representation of the attorney's clients. In the case here before us, the interrogatories are comparably broad, and though different information is sought, the explanation for its need is similar.

Attorney Sapienza represented persons charged with a criminal offense; therefore, his attempt to get such relief would now be regulated under the *Hawaii Rules of Criminal Procedure.* However, these rules were effective only five years *after* the events in *Sapienza,* which was in no sense a "criminal" case, and cannot be distinguished from the instant case on that basis. The *Sapienza* case was filed as a civil action, and was treated at all times as a civil action.

[6] *Sapienza* construes, *inter alia,* Section 6651 of the Revised Laws of Hawaii 1945 (subsequently Sec. 149-10, R.L.H. 1955). This statute, partly set out, 42 Haw. at 16-17, is substantively identical in pertinent part to Section 12-110 of the Charter of the City and County of Honolulu, which is here in issue.

are claimed to be without substantial difference. The holding in *Sapienza* is set out, 42 Haw. at 22, in two parts, and is as follows:

> [a] There neither was nor is any statute of the Territory of Hawaii requiring that "the records of convictions of crime and/or the police records" of adult residents of the county of Hawaii be open to public inspection while such records are in the custody of the chief of police of the said county.

and

> [b] The common-law rule is that they are not and to like effect is the implication in what was section 458, R.L.H. 1945 as amended, and is now section 7-1, R.L.H. 1955.

### (a) Statute

With the necessary implication of the *Sapienza* holding that the "public inspection statute"[7] is no authority under which counsel can proceed in order to get discovery of police records, we agree. With the further implication in the holding that that legislative act therefore partially controls resolution of the issue herein, we disagree. As we stated, *supra*, Part I, under the plain meaning rule a "public inspection" charter provision cannot control here, because it regulates a type of situation not presented here, and hence cannot be relied upon by either party, as it is not even relevant.[8]

---

[7] By the phrase "public inspection statute" is meant those successive statutory provisions referred to in fn. 6, *supra*.

[8] Note that the exact language in Sapienza, set out, *supra*, in the text, is that police records are not "open to public inspection" under the Hawaii statutes discussed in the opinion, including those noted in fn. 6, the predecessors to charter section 12-110. In a technical sense, this holding is correct, because, under these provisions, persons are not permitted to browse through police records at will, nor have same reproduced for their own use, as a general rule and in the usual situation. However, that situation does not conform with the particular facts here in that there was a bona fide attempt by counsel, through use of the recognized powers and processes of the judicial system, to obtain specific information, designated at least by kind or type, in pursuit of full representation of clients involved in legal action. Thus, even though the *Sapienza* language, quoted *supra*, is correct as a general statement of the meaning of the particular statutes cited in the opinion, including the public inspection statute, the public inspection prohibition of the charter provision is inapposite here, and the *Sapienza* holding as to statutory interpretation cannot, and will not, control our result here.

## (b) Common law

The second portion of the holding in the *Sapienza* case is that under "the common law rule", police records are not "open to public inspection while such records are in the custody of the chief of police." Under one view of the case, we would not be compelled to decide whether this isolated statement is, or is not, erroneous, because, as we have made clear, "public inspection" is not involved herein. However, to the extent that that statement may be interpreted to mean that such records are privileged, aud hence would resolve this issue here by *stare decisis*, we are compelled to overrule that holding, as an accurate statement of the law. Appellant asserts that, *in context*, the holding in *Sapienza* is that the *common law* recognized a privilege for police records and hence does not permit an attorney to use the recognized processes of the judicial system to gain discovery of the essence of portions of police records — portions specified at least by kind or type — in the pursuit of provision of adequate representation to specific clients. We have noted in Part I, the *correct* rule is that police records are discoverable, for purposes of litigation, in the absence of a special statute explicitly creating a privilege for these materials.

Upon close examination, the foundation for the *Sapienza* holding as to the "common law rule" recognizing a privilege for police records, as asserted by appellant, proves to be quite flimsy. The foundation essentially has two bases. We have examined each, in turn, and find that neither of them can support the holding.

First, the cases on which *Sapienza* relies for its statement of the common law either (a) are actually built on an interpretation of particular *statutes* enacted in other jurisdictions[9]

---

[9] This particular factor renders irrelevant the following three cases cited by the *Sapienza* decision: *State v. Dallao, et al.*, 187 La. 392, 439, 175 So. 4, 20 (1937), *appeal dismissed* and *cert. den.* 302 U.S. 635, 636 (1937); *State v. Livsey, et al.*, 190 La. 474, 182 So. 576 (1938); *State v. Mattio*, 212 La. 284, 295-99, 31 So. 2d 801, 805-06 (1947), *cert. den.* 332 U.S. 818 (1947). *State v. Shrouds*, 224 La. 955, 71 So. 2d 340 (1954) is based on the preceding three cases, and hence is no more relevant. *People v. Wilkins*, 135 Cal. App. 2d 371, 287 P.2d 555 (1955), which was concerned with California statutory provisions is also irrelevant. Even the portion of the *Wilkins* opinion actually quoted in *Sapienza*, 42 Haw. at 20, is not helpful, because there is

or (b) involve devising a definition of "public document"[10] for purposes of applying the Hawaii statutes, which statute we would hold irrelevant to the issue. Hence none of these cases can substantiate any *common law* rule to the effect that police records are regarded as privileged. The only other case cited in *Sapienza* that is not within that description was cited only for its *dicta*, and to the slight extent that the holding of that case would bear on the resolution of the issue of privilege, that case is actually contrary to the *Sapienza* holding.[11]

Furthermore, even were the cases cited in *Sapienza* some authority for what the common law may have been at one time, as stated by appellant, clear changes in the common law are certainly reflected in the more recent cases, from a wider range of jurisdictions, cited *supra* in Part I. These cases and the currently effective procedural rules,[12] compel us to hold that appellant's analysis of *Sapienza* retains validity, if any, only as an academic exercise.

The second and only other basis for the *Sapienza* holding that the common law would not permit discovery of police records is the statement in *Sapienza* that "to like effect is the

---

here no allegation that the answers sought to the interrogatories would not be material to the plaintiffs' case.

[10] *State v. Lee, et al.*, 173 La. 966, 139 So. 302 (1932) is based on an esoteric distinction drawn between "public" documents and "private document[s] in the possession of the state." The cases cited, 42 Haw. at 20-21, beginning with *State v. Brantley*, are concerned with the definition of "public record" and are likewise of no use in establishing a common law rule on privilege for police records.

[11] Reference is made to *State v. Dorsey*, 207 La. 928, 22 So. 2d 273 (1945), cited and discussed, 42 Haw. at 17-18. *Dorsey* sketches some gradual changes in the common law rule cited from the 1792 English case, 207 La. at 960, 22 So. 2d at 283, quoted 42 Haw. at 18. The holding in *Dorsey*, permitting pre-trial inspection by defendant's attorney of his client's confession, which was in the possession of the state, is itself an example of some of the trends noted in Dorsey toward a change in 1792 "common law rule." The *Sapienza* case seemingly ignores the fact that the "common law" is a dynamic process of slow change, and is not given as·immutable on tablets of stone.

[12] Compare *Sapienza's* reliance on the statement that "[a]t common law no right of inspection before trial was conceded to the accused", 42 Haw. at 18, to Rules 16 and 17, *Hawaii Rules of Criminal Procedure*, and to the cases cited in the text accompanying fn. 1. The broad discovery given litigants in civil cases is reflected in Rules 26-37, H.R.C.P.

implication in what was section 458, R.L.H. 1945, as amended, and is now section 7-1, R.L.H. 1955'' 42 Haw. at 22. These statutes are patently no authority whatsoever for the proposition that the common law rule is that there may be no discovery of police records except where permitted in the discretion of the chief of police.[13]

We hold that there is no absolute privilege for police records that would insulate such records from discovery process under the H.R.C.P.[14] Anything in *Sapienza* that is, or tends ineluctably, to the contrary is hereby overruled.

In affirming the lower court ruling we neither rule upon, nor intimate any ruling upon, any other objections that appellant may wish to raise with regard to these interrogatories either under the *Hawaii Rules of Civil Procedure*, or pursuant to any other provision or rule of law. We here specifically hold that neither common law nor the provisions of the charter give appellant the absolute or blanket privilege from discovery via interrogatories as to fall within the "privilege" exception of Rule 26(b) (1) to Rule 33(b), H.R.C.P.

Affirmed.

*Charles F. Marsland, Jr.*, Deputy Corporation Counsel, for defendant-appellant.

*David C. Schutter* for plaintiffs-appellees.

---

[13] Sec. 458, R.L.H. 1945, as amended, subsequently, sec. 7-1, R.L.H. 1955, cited, 42 Haw. at 22, with a current counterpart of HRS § 92-21, all merely establish a table of payments to be made for the reproduction of public documents or records. There is no statement in any of these statutes as to what may or may not be reproduced. Thus, far from being dispositive of the issue, these statutes are not even helpful in its resolution.

[14] Pre-trial discovery in a criminal case is regulated by the *Hawaii Rules of Criminal Procedure*.