540 P.2d 658

**Earl JOLLY, Supervisor of the Insurance and Claims Division of the Salt River Project, Petitioner,**

v.

**SUPERIOR COURT OF PINAL COUNTY, Arizona and the Honorable E. D. McBryde and SOUTHERN PACIFIC TRANSPORTATION CO., real party in interest, Respondents.**

**No. 12061.**

Supreme Court of Arizona,
In Banc.
Sept. 23, 1975.

Jennings, Strouss & Salmon by William T. Birmingham and Roxana C. Bacon, Phoenix, for petitioner.

Evans, Kitchel & Jenckes by David L. Beaugureau, Phoenix, for respondents.

HOLOHAN, Justice.

The petitioner, Earl Jolly, seeks relief by a special action against the respondent court alleging an abuse of discretion in denying petitioner's motion for a protective order under Rule 26(c) of the Arizona Rules of Civil Procedure, 16 A.R.S. The denial of the motion for protective order was made in an action in which two employees of Salt River Project seek to recover damages from respondent railroad for injuries sustained in a truck-freight train collision; the truck was owned by

Salt River Project and occupied by the two employees at the time of the collision. Mr. Earl Jolly, petitioner, serves in the capacity of Supervisor of the Insurance and Claim Division of the Salt River Project and is not a party to the negligence action.

On November 25, 1974, respondent railroad caused to be served on petitioner a subpoena duces tecum dated November 22, 1974 which required production of the following:

1) Petitioner present himself at counsel's for respondent transportation law offices on December 5, 1974 for the taking of petitioner's deposition;

2) Petitioner bring with him and produce all investigative notes, reports, correspondence, or reprimands of the Salt River Project or any of its departments relating in any way to the subject collision; and

3) Petitioner bring with him and produce all notes, records, reports, or other documents reflecting the names and addresses of all employees of Salt River Project who were working within a five-mile radius of the situs of the collision.

Petitioner's motion to quash the subpoena or, in the alternative, for a protective order was denied by respondent judge as untimely and moot. Petitioner thereafter filed a renewed motion for protective order which was denied by respondent judge with the finding that "the material sought is relevant to the case at Bar, and that it would not be overly burdensome or oppressive for the subpoenaed witness to produce same." Thereafter petitioner filed this Special Action.

■ Although this Court does possess the power to prevent enforcement of an unauthorized and nonappealable discovery order, *Dean v. Superior Court*, 84 Ariz. 104, 324 P.2d 764 (1958), we reiterate our previous statements that this power shall be exercised only in "rare" cases, as a matter of sound discretion according to the nature and circumstances of the case. *Zimmer-*

*man v. Superior Court*, 98 Ariz. 85, 402 P.2d 212 (1965); *Dean v. Superior Court, supra.* The fact that this Court does not routinely entertain petitions for extraordinary relief on discovery matters is apparent by the paucity of occasions in the past on which we have accepted jurisdiction over such actions. *Cornet Stores v. Superior Court*, 108 Ariz. 84, 492 P.2d 1191 (1972); *Zimmerman v. Superior Court, supra; Industrial Commission v. Holohan*, 97 Ariz. 122, 397 P.2d 624 (1964); *Watts v. Superior Court*, 87 Ariz. 1, 347 P.2d 565 (1959); *Dean v. Superior Court, supra; Di Pietruntonio v. Superior Court*, 84 Ariz. 291, 327 P.2d 746 (1958). We view the contentions raised by the petitioner extending to industrial labor relations to be of sufficient and extraordinary importance to justify the review requested.

■ Before reaching the merits of the issues raised, respondent railroad has urged that relief be denied because the actions of petitioner in the filing of the motions seeking a protective order were untimely throughout the attempted discovery. Rule 30(b), the precursor in part of the present Rule 26(c), required that an application for a protective order must be made "seasonably." This provision was deleted in the 1970 revision of the rule and the Advisory Committee's note accompanying the amendment offers no explanation as to why the word "seasonably" was stricken. Advisory Committee Notes, Amendments of Federal Rules of Civil Procedure, eff. July 1, 1970. Notwithstanding the absence of reference in amended Rule 26(c) to a requirement for seasonable application for the order, we consider the timeliness of a motion for a protective order to be within the discretion of the court. 4 J. Moore, Federal Practice ¶ 26.68 (2d ed. 1970); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, at 262 (1970).

The initial appearance for the deposition was scheduled for December 5, 1974, and continued by stipulation to January 7, 1975. On the 7th, respondent railroad was notified that a motion to quash the subpoena

or, in the alternative, for a protective order, was outstanding; petitioner had mailed the motion to the Pinal County Superior Court the day before, January 6, 1975. The motion was denied by the superior court on the grounds of untimeliness and mootness. Petitioner then filed a renewed motion for a protective order on February 24, 1975. This motion was denied without sanctions on March 31, 1975. Respondent railroad again had served upon the petitioner a subpoena duces tecum for a deposition scheduled April 8, 1975. On this date, however, petitioner's counsel appeared in lieu of petitioner and instructed counsel for respondent railroad that a motion for protective order had been filed in the Superior Court of Pinal County that very morning requesting that petitioner be protected from producing the subject documents until the Supreme Court had rendered its decision respecting the Petition for Special Action.

█ In each of the above described attempts by respondent railroad to obtain compliance with the subpoena duces tecum, and particularly with the first attempt, there transpired a sufficient interval of time before the specified date of appearance and production of documents for petitioner to have sought a court order postponing or dispensing with his duty. Responding to an analogous chronology of events, the Ninth Circuit observed:

> "Counsel's view seems to be that a party need not appear if a motion under Rule 30(b), F.R.Civ.P. is on file, even though it has not been acted upon. Any such rule would be an intolerable clog upon the discovery process. Rule 30(b) places the burden on the proposed deponent to get an order, not just to make a motion. And if there is not time to have his motion heard, the least that he can be expected to do is to get an order postponing the time of the deposition until his motion can be heard. He might also appear and seek to adjourn the deposition until an order can be obtained. (Rule 30(d)). But unless he has ob-

tained a court order that postpones or dispenses with his duty to appear, that duty remains. Otherwise, as this case shows, a proposed deponent, by merely filing motions under Rule 30(b), could evade giving his deposition indefinitely. Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear." *Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 269 (9th Cir. 1964), *cert denied,* 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965); *see Twardzik v. Sepauley,* 286 F.Supp. 346, 350 (E.D.Pa.1968).

*Dolman* poignantly displays the deleterious effect upon the discovery process which may result from a party's unilateral filing of a motion for a protective order, or the giving of notice of the filing thereof, on the very day the deposition and production of documents is to take place. In order for one to be relieved of the responsibility of complying with a properly issued subpoena duces tecum, it is necessary that court approval be obtained. Had the court below continued to deny the motion for protective order solely on the basis of untimeliness, we would find no abuse of discretion with that ruling. The fact that the superior court subsequently based its denial upon other grounds compels us to examine the petitioner's contentions on the merits.

In reverse order from that presented for review, the petitioner's first major contention is that respondent railroad's discovery request was unreasonable and oppressive within the language of Rule 26(c). Specifically, petitioner predicates his argument on 1) the need for employer-employee confidentiality to facilitate communications from workers respecting Salt River Project's safety operations, and 2) the adverse labor consequences which may ensue if investigative information is released in an alleged breach of Salt River Project's collective bargaining agreement. Petitioner is essentially asking this Court to grant a privilege from the discovery process for information given to an employer by its em-

ployees pursuant to investigations concerning possible violations of company safety standards.

The two cases adduced by petitioner to buttress his argument inadequately address the issues presented. *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605 (D.D.C.1969), involved a discovery request for private financial records of non-parties. District Judge Holtzoff held that discovery of the records at the controversy's then early stage would constitute an unreasonable intrusion upon an individual's natural privacy. *Id.* at 607. Similarly inapposite to the facts at hand is the decision of *City of Phoenix v. Peterson*, 11 Ariz.App. 136, 462 P.2d 829 (1969). In *Peterson*, the Arizona Court of Appeals recognized a measure of privilege in police department personnel records insofar as the records related to "irrelevant portions of the attached administrative file, subject to court supervision in the event of dispute." *Id.* at 140. Matter pertaining exclusively to the fact, nature and outcome of police officer disciplinary proceedings were not included within the privilege. *Hecht* and *Peterson* fail to illuminate the petitioner's privilege contentions concerning matters of a non-personal, unofficial nature.

There is authority, expressed in a series of cases dealing with medical malpractice, for granting a privilege from the discovery process for records and reports formulated by medical staff committees to evaluate and improve clinical practices. *E. g., Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *aff'd*, 479 F.2d 920 (D.C.Cir. 1973); *Oviatt v. Archbishop Bergan Mercy Hospital*, 191 Neb. 224, 214 N.W.2d 490 (1974); *cf. Kenney v. Superior Court*, 255 Cal.App.2d 106, 63 Cal.Rptr. 84 (1967); *Nazareth Literary & Benevolent Institution v. Stephenson*, 503 S.W.2d 177 (Ky.Civ. App.1973). The privilege is justified by the overwhelming public interest in maintaining the confidentiality of the staff meetings so that the flow of ideas and advice may continue unimpeded, and the quality of medical care and treatment may be en-

hanced. *Bredice v. Doctors Hospital, Inc., supra* at 250; *see* 4 J. Moore, Federal Practice ¶ 26.60[3] (2d ed. 1970). In *Gillman v. United States*, 53 F.R.D. 316 (S.D.N.Y.1971), statements given by hospital personnel before a medical staff committee and those made before a court of law were compared. The court stated:

"But the threat of disciplinary action alone, quite aside from suits for damages, has a chilling effect on testimony. Such distortion of an incident as there may be in order to blind the Board of Inquiry is as likely to occur for the purpose of averting disciplinary action as it is to avoid damages in litigation. Aside from the normal tendency for self-exculpation, we do not believe that a narration of the facts will be more inhibited at the Board level than it would be in a court room, even if its pre-trial discovery is predictable." *Gillman v. United States*, 53 F.R.D. 316, 319 (S.D.N.Y.1971).

We agree that an employee's legitimate concerns for job security, opportunities for promotion and good will with superiors may lead to less than candid disclosure to an investigative authority, and may result in concealment or manufactured testimony. Recognition of this fact renders it doubtful whether the effectiveness of the petitioner's safety investigations will become any more impaired by subjecting them to discovery than they presently are because of the employee's parochial, employment concerns.

■ Absent an overriding matter affecting public interest as found in several of the hospital cases, we decline to judicially create a qualified privilege under the Arizona Rules of Civil Procedure with respect to information given by employees to employers for purposes of improving the employer's internal safety program and of disciplining employees. The arguments advanced by petitioner as to the harmful effect the court's failure to recognize a privilege may have upon the company's labor relations are speculative and unsupported by case authority or adequate fac-

tual data from which judicial opinions may be formed. We do not elect to engage in similar conjecture.

■ Petitioner's second major contention is that material sought in the subpoena duces tecum is irrelevant to the subject matter of the suit to which respondent railroad has been named defendant. Petitioner has cited *Collins and Aikman Corp. v. J. P. Stevens & Co.*, 51 F.R.D. 219 (D.S.C. 1971), in support of the proposition that a court must afford greater protection from the discovery process as to matters of relevance to a non-party than to a party litigant. This case was handed down shortly after adoption of the 1970 amendment to Rule 26 and the court itself acknowledged the uncertainty "whether the same broad test for relevance of documents will be utilized with respect to third parties." *Id.* at 221. It is significant that no other recent case has drawn this classification. The wide variety of orders for the protection of parties and witnesses in the discovery process provided by Rule 26(c) and Rule 45(b), 16 A.R.S. Rules 26(c), 45(b), assure adequate protection of third parties from harassment, inconvenience or the disclosure of confidential documents. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2457, at 434 (1970). We perceive of no need to construct variant tests of relevance distinguishing between parties and non-parties.

In contrast to the broad discovery principle embraced by the Arizona Rules of Civil Procedure, *Dean v. Superior Court, supra,* and a general, judicial reluctance to anticipate questions of relevancy, 4 J.

Moore, Federal Practice ¶ 26.72, at 26–535 (2d ed. 1970), the courts have, on limited occasions, restricted discovery on grounds of irrelevancy. The extent to which a subject matter is determined irrelevant must necessarily vary in accordance with the particular issues and facts of the individual case. Information procured by an investigative authority of an organization and which is directed at internal safety improvements may not be relevant in certain circumstances. *Gillman v. United States, supra.* Because of the very nature of Salt River Project's inquiry,[1] comments for future improvements or procedure and safety may have been elicited from employees which have no relevance to the litigation to which respondent railroad is a litigant. Salt River Project employees should be assured that they can speak freely on matters relating to Salt River Project's safety code. A second instance in which relevancy considerations may restrict discovery is disciplinary action taken by an organization against its personnel found to have violated an internal safety code provision. *Richards v. Main Central Railroad,* 21 F.R.D. 590 (S.D.Me.1957); *Banks v. Lockheed-Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971); *cf. City of Phoenix v. Peterson, supra.* Conclusions reached by Salt River Project as to whether an employee has violated a safety rule and the consequent disciplinary action awarded, if any, would appear irrelevant to the negligence action.

■■ The recognition of such relevance limitations, however, does not automatically denominate as irrelevant all matter sought

---

1. Pursuant to a collective bargaining agreement, Salt River Project is required to investigate all accidents involving employees in the course of their employment and requiring treatment by a physician. The purpose of the investigation is threefold: 1) to determine if any safety rule, instruction or procedure has been violated; 2) to discipline the violator; and 3) to maintain records on each employee to provide an accurate basis for internal disciplinary action. If it is determined that an established safety standard has been violated or that the action could have been prevented by application of due caution on the part of the employee, investigative data and reports are submitted to a committee whose function is to determine the correct disciplinary action. Safety rules and regulations are codified separately under the title of "Accident Prevention Rules" and must be approved by the Joint Union-Management Negotiating Committee. Petitioner also asserts that this accident reporting and investigative system is necessary to apprise management of areas and personnel requiring increased safety supervision.

in an action in which the limitations apply. To the contrary, statements of Salt River Project personnel as to what actually happened are important to respondent railroad in its discovery of facts and may be necessary to forestall recent contrivance on the part of its adversary. Statements taken shortly after an occurrence are unique and can never be duplicated precisely. *Guilford National Bank v. Southern Railway Co.,* 297 F.2d 921 (4th Cir. 1962). The proper demarcation in these circumstances is between purely factual, investigative matters on the one hand, and materials which are the product of reflective deliberation or policy-making processes on the other. Information of the former nature made and compiled by Salt River Project investigators who examined the collision may be of particular relevance to the litigation now pending.[2] Furthermore, purely factual data contained in deliberative memoranda and severable from its context would generally be discoverable. *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Machin v. Zuckert,* 316 F.2d 336 (D.C. Cir. 1963).

■ In the event of a dispute between the parties, or between parties and third persons, as to a particular item's relevance, the ultimate determination is a judicial one. Rule 26(c) is a uniquely appropriate tool for the court to utilize in this regard for it permits judicial restrictions to be imposed on the discovery process and confers upon the courts considerable flexibility and discretion in selecting various means to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2036 (1970). *See Tucson Medical Center Incorporated v. Rowles,* 21 Ariz.App. 424, 520 P.2d 518 (1974). In order for the court to determine the relevancy of a specified subject matter, it may become necessary for the party claiming irrelevancy to produce the documents under seal for an *in camera* inspection by the court, together with supporting factual details of each item claimed to be irrelevant. *See Hunter v. International Systems & Control Corp.,* 51 F.R.D. 251 (W.D.Mo.1970). Petitioner did not endeavor to follow this procedure in the present action, and thus narrowed the trial court's alternatives in ruling on the motion to either deny or grant it *in toto.* Absent the benefit of *in camera* examination of the subject documents and a particularized demonstration by petitioner that certain subject matter of the discovery request was irrelevant, it cannot be said that respondent court abused his authority. *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204 (8th Cir. 1973), *cert. denied,* 414 U.S. 1162 (1974). If petitioner deems this order inadequate and desires a less restrictive protective order under Rule 26(c), *e. g.,* an order limiting the scope of discovery to certain matters, petitioner should seasonably apply to the trial court for such order upon service of the subpoena duces tecum together with specific statements respecting each item of allegedly irrelevant information showing the undue burden which will result to petitioner by their discovery. *Cornet Stores v. Superior Court, supra.*

2. We have not, of course, received the material sought by the subpoena duces tecum, much less had the opportunity to peruse it. We therefore make these statements respecting the relevancy of the subject matter from our review of the case without the advantage of having examined the questioned information. Subsequent to the filing of the Petition for Special Action, petitioner has informed this Court that he has supplied the respondent with the names of all Salt River Project employees within a five-mile radius of the accident. This would apparently leave in dispute only the matter described as "all investigative notes, reports, correspondence, or reprimands of the Salt River Project or any of its departments relating in any way to the subject collision." While reprimands would clearly appear to be irrelevant to the negligence action, investigative notes, reports, and correspondence may or may not be relevant depending upon the extent to which they contain nonfactual, deliberative and policy-making matter.

We conclude, for the reasons stated, that the respondent superior court acted within the bounds of sound discretion in denying petitioner's motion for a protective order.

Relief denied.

CAMERON, C. J., STRUCKMEYER, V. C. J., and LOCKWOOD and HAYS, JJ., concur.

GORDON, J., did not participate in the determination of this matter and retired LOCKWOOD, J., sat in his stead.