Electronically Filed
Supreme Court
SCPW-24-0000537
10-OCT-2024
09:57 AM
Dkt. 49 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

HAWAI'I POLICE DEPARTMENT, COUNTY OF HAWAI'I,
Petitioner,

vs.

THE HONORABLE PETER K. KUBOTA,
Judge of the Circuit Court of the Third Circuit,
State of Hawai'i, Respondent Judge,

and

ALBERT IAN SCHWEITZER; SHAWN SCHWEITZER; STATE OF HAWAI'I,
Respondents.

SCPW-24-0000537

ORIGINAL PROCEEDING
(CASE NOS. 3CSP-23-0000003 and 3CSP-23-0000017)

OCTOBER 10, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.,

OPINION OF THE COURT BY EDDINS, J.

**I.**

Brothers Albert Ian (Ian) Schweitzer and Shawn Schweitzer

seek compensation for being wrongfully imprisoned.  Under

Hawai'i's wrongful conviction compensation law, Hawai'i Revised Statutes (HRS) Chapter 661B, the Schweitzers must show that they are "actually innocent."  To do that, the Schweitzers demand that the Hawai'i County Police Department (HPD) and the County of Hawai'i Office of the Prosecuting Attorney (CHOPA or county prosecutors) turn over investigative materials relating to the crimes for which they were imprisoned.  The records may contain evidence that they did not commit those crimes, the brothers say.

In 2023, Ian Schweitzer filed a Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition.  He requested release from prison and to have his conviction vacated.  The county prosecutors stipulated to new evidence, including the DNA evidence.  That evidence pointed to someone else.  Circuit Court of the Third Circuit Judge Peter K. Kubota concluded that a jury considering the new evidence would likely reach a different outcome.  He granted Ian's petition.

After decades behind bars, Ian walked out of court a free man.

Then Shawn moved to withdraw his guilty plea and vacate his convictions.  The court vacated his convictions, too.

Their convictions lifted, the Schweitzers sought monetary compensation under HRS Chapter 661B.  However, the Attorney General informed the Schweitzers that to begin their

compensation case, the criminal court must have found that they are "actually innocent." As a result, the Schweitzers filed a "Joint Petition for Relief Pursuant to HRS Chapter 661B" in their criminal, Rule 40 proceedings. They asked the court to find them "actually innocent," so they can commence their civil claim for compensation.

To establish their innocence, the Schweitzers turned to discovery. They demanded that HPD and CHOPA hand over investigatory records. HPD and CHOPA refused. They said that HPD is still investigating the case. Until that investigation is complete, the law enforcement agencies maintained, no investigatory materials could be provided.

The circuit court instructed the Schweitzers to file a motion compelling HPD to produce the materials. Then, it granted the motion and directed the Schweitzers to prepare a subpoena duces tecum directed to HPD. Next, HPD filed a motion to quash the court's subpoena. And then, after the court denied that motion, HPD filed a writ of mandamus petition to this court.

Confronted by a complex and baffling legal landscape, the parties and the court inadvertently made significant procedural missteps. We correct those missteps. We reorient the proceedings and set the Schweitzers on a more straightforward

path to the discovery they seek. And the compensation they feel is deserved.

Here, we exercise our authority to issue a writ of mandamus. The circuit court had no discretion to act on the civil claims in the post-conviction proceeding, because under HRPP 40(c)(3) the only correct outcome was to transfer the civil claims to a new civil case. We order the circuit court to quash the Schweitzers' subpoena. We also order it to transfer the Schweitzers' joint petition for relief under HRS Chapter 661B to a new civil proceeding.

The new civil case must follow the procedures prescribed by Hawai'i Rules of Civil Procedure (HRCP) Rule 26 and HRS § 661B-2 (2016). Rule 26 sets forth the appropriate framework for the court to balance the Schweitzers' compelling interest in obtaining information necessary to establish their claims, while protecting legitimate law enforcement interests in the confidentiality of investigative materials relating to a pending matter. With discovery in hand, the Schweitzers can then fully litigate their entitlement to compensation under Chapter 661B.

**II.**

**A.    Legal Background**

In 2016, the Hawai'i legislature passed a law that allowed an exoneree to seek $50,000 for each year lost while serving time for a crime they did not commit. An actionable claim under

4

HRS § 661B-1(b)(1) (2016) alleges that "[t]he judgment of conviction was reversed or vacated because the petitioner was actually innocent of the crimes for which the petitioner was convicted, and the court decision so states[.]"

This court recently identified a possible flaw in the law. No wrongs may ever right. If the words "actual innocence" were compulsory to HRPP post-conviction relief orders, petitioners "would rarely, if ever, be eligible for compensation." Jardine v. State, ___ P.3d ____, 2024 WL 4314979, at *10 (Haw. 2024). We reasoned that "actual innocence would be nearly impossible to satisfy." Id. at *11.

Why? Actual innocence is just not something a criminal court thinks about when it reverses or vacates a conviction. Post-conviction relief – a Rule 40 win – depends on whether "the evidence is of such a nature as would probably change the result of a later trial." State v. McNulty, 60 Haw. 259, 268, 588 P.2d 438, 445 (1978), *overruled on other grounds by* Raines v. State, 79 Hawai'i 219, 900 P.2d 1286 (1995). Thus, Jardine explained, "it is unlikely that an HRPP Rule 40 court will use the words 'actually innocent,' because that is not the legal standard under which it vacates a conviction or orders a new trial." Jardine, 2024 WL 4314979, at *11.

To activate Hawai'i's wrongful conviction compensation law, and honor the legislative intent to "identify deserving

5

individuals who are innocent of crimes from those who are not[,]" we provided a path to relief. Id. at *12-*13 (quoting H. Stand. Rep. No. 411-16, in 2016 House Journal, at 903). We held "that HRS § 661B-1's requirement that a vacatur or reversal of a conviction 'so state' that a petitioner is 'actually innocent' means that such order must set forth facts supporting the petitioner's actual innocence, but need not use the words 'actually innocent.'" Id. at *8.

We interpreted HRS § 661B-1 based on its plain meaning. "[A]ctually innocent" simply means that a person "did not commit the crime." Id. at *1. Thus, there is no need for a criminal court to write those two words in an order for an exoneree to have an actionable 661B claim. Rather an order that finds facts to support actual innocence, and "make[s] clear that the basis for the reversal or vacatur is factual innocence, or innocence of the crime," provides the necessary pleading requirement a petitioner must allege to present an actionable claim. Id. at *10.

Jardine ensured access to the justice system for those who seek redress for wrongful conviction and imprisonment. We described chapter 661B litigation as a "two-stage process." "First, under HRS § 661B-1 a petitioner must allege an actionable claim. Second, under HRS § 661B-3 (2016), a petitioner must prove that they are 'actually innocent.'" Id.

6

at *13.  Thus, if a vacatur order provides a basis for factual innocence, then a petitioner may prove their "actual innocence" by a preponderance of the evidence at a trial.

Like any civil case, the Hawai'i Rules of Civil Procedure tee up a wrongful conviction compensation trial.  Id. at *18 ("[t]hese trials will proceed under the Hawai'i Rules of Civil Procedure").  Then at trial, the court "will admit relevant evidence as necessary to make determinations as to a petitioner's eligibility for compensation under the statute."  Id.  In the end, the court (unless all parties consent to a jury trial) will decide whether a petitioner has proved the HRS § 661B-3 elements of their claim, and whether the State has proved any affirmative defenses under that law.

**B.  Underlying Criminal Cases**

On December 25, 1991, Dana Ireland died from injuries that she sustained the day before.

On October 9, 1997, brothers Ian Schweitzer and Shawn Schweitzer were indicted for the murder, sexual assault, and kidnapping of Dana Ireland.  But after DNA test results of crime scene evidence excluded them as the source of the DNA, the county prosecutors dismissed all charges on October 20, 1998.

Based on testimony from an in-custody informant, county prosecutors reindicted the Schweitzers in May 1999.  Because of a Bruton issue related to Shawn's "confession," the court

severed the brothers' cases.  After a trial, on February 16, 2000 the jury found Ian guilty of second degree murder, kidnapping, and sexual assault in the first degree.  In April 2000, the court sentenced Ian to life imprisonment with the possibility of parole.

On May 9, 2000, per a plea agreement, Shawn pled guilty to manslaughter and kidnapping.  That day, the court sentenced him to one year in jail and probation.

C.    **The Schweitzers' Post-Conviction Proceedings**

On January 23, 2023, Ian petitioned the circuit court under HRPP Rule 40 to vacate his conviction, order his release from custody, and dismiss his indictment with prejudice.  Ian and the county prosecutors stipulated to a set of facts.

Those facts pointed to a different trial outcome.  The parties agreed that post-conviction DNA testing connected "Unknown Male #1" to the crime, and excluded the Schweitzers. They also agreed that bitemark evidence used at trial was unreliable.

There was more.  At trial the prosecution theorized that Ian was driving his 1953 Volkswagen Beetle and hit Ireland while she rode her bicycle.  Turns out, the crime scene's tire tread evidence did not match Ian's bug; rather, a much larger vehicle had produced the tire tracks at the crime scene.  The parties also mentioned in the stipulated facts that Shawn Schweitzer had

8

recanted his prior confession, maintained his innocence, and passed a polygraph examination.

The parties stipulated that the DNA and bitemark evidence was newly discovered evidence that could not have been presented at trial and that the tire tread evidence was newly presented evidence.

Per HRPP Rule 40(a)(1), newly discovered evidence is one reason for relief from a criminal judgment. Newly presented evidence is evidence that could have been presented in the original trial, but was not. See Griffin v. Johnson, 350 F.3d 956, 961 (9th Cir. 2003). Here, the court concluded that the newly presented tire tread evidence was "highly probative and highly reliable" to determining the outcome, so the court included that evidence in its consideration.

The day after the parties stipulated to facts supporting HRPP Rule 40 post-conviction relief, the circuit court held an evidentiary hearing. The court orally granted the petition, vacated Ian's convictions, and dismissed the indictment without prejudice. Ian walked out of court, a free man for the first time in decades.

About nine months later, on October 20, 2023, Ian's attorneys submitted a proposed order granting the HRPP Rule 40 petition. It included extensive findings of fact and conclusions of law. The FOFs largely reflected the parties'

stipulated facts. That same day, the court adopted Ian's FOFs and COLs. The new evidence, the order announced, "conclusively proves that in a new trial a jury would likely reach a verdict of acquittal." The court vacated Ian's convictions and dismissed the indictment without prejudice.

Four days later, Shawn and the county prosecutors submitted a "Stipulation to Allow Withdrawal of Guilty Plea and to Vacate Judgment of Conviction." The court approved the stipulation and vacated Shawn's conviction. Then it granted the prosecutor's oral motion to dismiss his criminal case without prejudice. When Shawn left court, he no longer had convictions for manslaughter and kidnapping.

On March 7, 2024, Ian filed a "Motion for Finding of Actual Innocence." Ian asked the court to make a finding that, for purposes of HRS § 661B-3, he was convicted and imprisoned but "actually innocent" of the crimes he was incarcerated for "so he can seek compensation pursuant to HRS § 661B-3(c)."

Ian attached to the motion a February 27, 2024 letter signed by Attorney General Anne E. Lopez. The letter stated that Ian did not meet the requirements to seek compensation under HRS § 661B-1. The Attorney General wrote that because the court's findings vacating the conviction did not say Ian was "actually innocent" and because the court dismissed the charges without prejudice, Ian did not meet the statutory requirement

that the post-conviction order "so states" a person is "actually innocent."

On March 15, 2024, the county prosecutors opposed Ian's motion for a finding of actual innocence. CHOPA took a different position than the Attorney General. It argued, "the determination of 'actual innocence' as part of the Rule 40 petition is improper and that Petitioner can address this issue through Section 661B."

Actual innocence is not the standard a Rule 40 court uses to make its decision, CHOPA explained. HRPP Rule 40(a)(1) provides five reasons for a petitioner to obtain relief from a criminal judgment. Ian used the fourth reason, newly discovered evidence. This court has adopted a four-part test to decide if newly discovered evidence warrants a new trial:

> (1) the evidence has been discovered after trial; (2) such evidence could not have been discovered before or at trial through the exercise of due diligence; (3) the evidence is material to the issues and not cumulative or offered solely for purposes of impeachment; and (4) the evidence is of such a nature as would probably change the result of a later trial.

McNulty, 60 Haw. at 267–68, 588 P.2d at 445. Thus, CHOPA argued, the Rule 40 court considers only whether newly discovered evidence could change the jury's verdict, not whether the petitioner is actually innocent.

The Attorney General and the county prosecutors took incompatible positions. Ian only gets a 661B proceeding, the AG

said, if his Rule 40 order states that he is actually innocent. But a Rule 40 judge would never say that, the County counters, because actual innocence isn't the standard to decide Rule 40 petitions.

Trapped by this quandary, on June 4, 2024, Ian and Shawn filed a "Joint Petition for Relief Pursuant to HRS Chapter 661B" in the two Rule 40 dockets. The brothers sought "a finding from the Court that they are both actually innocent and [an] order that they be compensated pursuant to HRS § 661B-3(c)." They styled the joint petition as a civil complaint in the criminal dockets, citing civil laws to establish venue and a right of action.

The county prosecutors opposed the Schweitzers' joint petition.

Meanwhile, a forensic genealogy expert had identified a suspect believed to be Unknown Male #1. That person was Albert Lauro, Jr. A DNA sample clandestinely collected from Lauro's discarded disposable fork matched the DNA found at the crime scene.

On July 19, 2024, HPD collected Lauro's DNA from a cheek swab without arresting him. On July 24, testing revealed that the cheek sample matched the fork sample and the DNA from the crime scene. On July 26, 2024, the Schweitzers' lawyers

12

requested an emergency chambers conference with the court. Reportedly, Lauro had died by suicide.

The next day, the circuit court held the emergency conference. It instructed the Schweitzers' counsel to file a motion to compel discovery from the Hawai'i County prosecutors and police department requiring them to produce any relevant information regarding Ireland's murder and their investigation into Lauro. The court set a hearing on the motion for July 30, 2024.

On July 28, 2024, the Schweitzers filed the court-suggested motion to compel discovery. The Schweitzers cited Brady v. Maryland, 373 U.S. 83 (1963), HRPP Rule 16, and Hawai'i Rules of Professional Conduct Rule 3.8(b) to support their motion.

The next day, CHOPA filed their memorandum in opposition. It argued that Brady and the HRPP didn't apply to the Schweitzers, because they were no longer criminal defendants.

On July 30, 2024, the circuit court held a hearing where it ruled that the Lauro investigation was highly relevant to determining the Schweitzers' actual innocence. The court granted the Schweitzers' motion to compel and invited them to submit a subpoena duces tecum due in two days, August 1, 2024 at 9:30 a.m. It also ordered HPD to produce documents for in camera review. The court would decide whether those materials should be disclosed to the Schweitzers.

13

On August 1, HPD filed a motion to quash the subpoena. After the court continued the matter, HPD filed a new motion to quash on August 2.

Citing to the Uniform Information Practices Act, HRS §§ 92F-13 (2012) and 92F-22 (2012), HPD argued that the Schweitzers "are not entitled to the requested records at this time because release of the records would frustrate a legitimate government purpose and could upend the integrity of the ongoing and open criminal investigation" into Ireland's death. HPD said that it was still completing its investigation "related to the new developments involving the identification of Unknown Male #1 as Albert Lauro, Jr. (deceased)" and that "[i]t has been approximately one week" since HPD learned of Lauro's death and "the ongoing investigation is currently incomplete." An HPD Captain declared that releasing police records publicly might interfere with witness testimony or other evidence.

HPD further argued that the Schweitzers reliance on Brady is misguided. Brady only applies to accused criminal defendants, HPD explained, but both Schweitzers were no longer defendants; their convictions had been vacated and their cases dismissed without prejudice.

If the court insisted on allowing the subpoena, HPD requested in camera review and a protective order.

That same day, the circuit court declined to grant the motion to quash and granted the Schweitzers' motion to compel. The next day, HPD filed another motion to quash, making similar arguments.

On August 5, 2024, the court reconvened for a hearing on the Schweitzers' motion for finding of actual innocence, their petition for Chapter 661B relief, and HPD's motion to quash subpoena duces tecum.

The circuit court ruled that even though the Schweitzers were no longer accused in a criminal prosecution, Brady's principles still apply. CHOPA opposed the Schweitzers actual innocence, the court reasoned, so evidence tending to exonerate them is relevant to the Schweitzers' actual innocence claim. The court ordered HPD to submit its investigative materials for in camera review. Then the court would decide whether to release documents to the Schweitzers.

On August 6, 2024, HPD filed an emergency motion to stay the subpoena pending review by this court.

On August 7, the circuit court held a hearing on releasing the HPD documents. The court asked the Hawai'i County deputy corporation counsel, representing HPD, why the investigation was still ongoing, given Lauro's death. Counsel mused that HPD might be able to identify someone that was with Lauro and was complicit in Ireland's death.

The court remarked that it didn't see what further investigation would be necessary, and that the public's right to understand the investigation into Lauro greatly outweighed the value of a continuing investigation. But, recognizing the mandamus petition pending before us, the court paused the case.

**D. Writ of Mandamus Petition and Arguments**

On August 7, 2024, HPD filed a petition for writ of mandamus. HPD sought an order to vacate the August 5, 2024 denial of its motion to quash, and to order the circuit court to maintain the confidentiality of the requested law enforcement records. HPD argued that UIPA supported its demand to keep the records confidential. And it said Brady doesn't apply.

On August 8, this court issued an order staying the subpoena. We ordered briefing.

Ian opposes HPD's writ. He makes five main arguments.

First, Ian argues that UIPA is "not a shield against discovery." Just because a document falls within a UIPA exception, does not mean it's undiscoverable. See State of Hawaiʻi Org. of Police Officers v. City and Cnty. of Honolulu, 149 Hawaiʻi 492, 508-09, 494 P.3d 1225, 1241-42 (2021). Rather, the Hawaiʻi Rules of Civil Procedure govern discovery, Ian says. There is no UIPA privilege in HRCP's discovery rules.

Second, Ian argues that the Hawai'i Rules of Evidence (HRE) govern privileges, and HRE 501 requires a privilege to be "expressly provided by law." UIPA does not create a privilege.

Third, Ian attacks HPD's assertion of an ongoing investigation as "conclusory" and "unsupported by any specific evidence or factual detail." Ian argues that HPD's suspicions fail to justify withholding records, citing Grube v. Trader, 142 Hawai'i 412, 426, 420 P.3d 343, 357 (2018) (nonspecific assertions insufficient to justify keeping records confidential). Courts need something more concrete, Ian contends.

Fourth, Ian argues that Brady's principles obligate the police to turn over exculpatory material in HRS Chapter 661B cases.

Fifth, Ian claims that a prosecutor's professional responsibility also requires the county to turn over records. See Hawai'i Rules of Professional Conduct Rule 3.8 Cmt. 1 (prosecutor has ethical duty to rectify the conviction of innocent people).

For his part, Shawn argues that HPD failed to meet the high threshold for a writ of mandamus: an indisputable right to relief. See Womble Bond Dickinson (US) LLP v. Kim, 153 Hawai'i 307, 319, 537 P.3d 1154, 1166 (2023).

17

First, Shawn contends there is no absolute privilege that shields police records from discovery in civil or criminal cases. Shawn says that the subpoena, in a Rule 40 case, is a criminal, not civil, matter.

Second, Shawn argues that HPD's justifications for concealing information were unfounded. So, no UIPA exception applies to HPD's investigation into Lauro.

Third, Shawn urges that the appropriate safeguard to protect confidential information is for the circuit court to review the documents in chambers.

In their supplemental brief, the brothers further argue that a Rule 40 court is the appropriate forum to determine actual innocence. A Rule 40 court must decide actual innocence, they say, because HRS § 661B-1 refers to a Rule 40 court decision that "so states" actual innocence.

The brothers argue that HRPP Rule 40(c)(3) does not require moving the actual innocence question to civil court. That rule reads:

> (3) Separate Cause of Action. If a post-conviction petition alleges neither illegality of judgment nor illegality of post-conviction "custody" or "restraint" but instead alleges a cause of action based on a civil rights statute or other separate cause of action, the court shall treat the pleading as a civil complaint not governed by this rule. However, **where a petition seeks relief of the nature provided by this rule and simultaneously pleads a separate claim or claims under a civil rights statute or other separate cause of action, the latter claim or claims shall be ordered transferred by the court for disposition under the civil rules.**

18

HRPP Rule 40(c)(3) (emphasis added). The brothers say that their HRS Chapter 661B joint petition does not allege a separate cause of action. Rather, it just requests a finding in the criminal case that is a precondition to enter civil court.

Third, the brothers argue that because the joint petition is criminal, Hawai'i's civil discovery rules don't apply.

Fourth, the brothers believe there is no absolute privilege for police records, citing Tighe v. City & Cnty. of Honolulu, 55 Haw. 420, 422, 520 P.2d 1345, 1346 (1974). And, they say, HPD's purported UIPA privilege is unsupported.

CHOPA and HPD each filed supplemental briefs. Those briefs argue that the orders granting Ian's Rule 40 petition and Shawn's plea withdrawal, and vacating the brothers' convictions, ended the Rule 40 matter. The Schweitzers' joint petition invoked HRS Chapter 661B, so it should be treated as a separate civil action under HRPP 40(c)(3). And, the county entities note, the Schweitzers didn't complete procedural requirements to kickstart a 661B action, like serving the AGs.

The county prosecutors also argue that HPD's records are privileged law enforcement records per Mehau v. Gannett Pac. Corp., 66 Haw. 133, 156, 658 P.2d 312, 327 (1983). CHOPA explains that law enforcement needs to keep investigating this case, and to do that effectively, confidentiality is important.

19

It even floats the possibility that the Schweitzers are guilty after all, insisting there is "no evidence to conclusively show" that the Schweitzers were not involved in Ireland's death. CHOPA also says it needs time to follow up on the new DNA evidence pointing to Lauro.

Had the Schweitzers properly filed their 661B petition as a separate civil action, HPD adds, then HRCP discovery rules would apply. HPD relies on the law enforcement privilege that it thinks this court created in Mehau. Because that case purportedly grounded this putative privilege in UIPA, HPD argues it satisfies HRE 501's requirement that evidentiary privileges arise from a statute.

## III.

The Hawai'i Constitution and HRS § 602-5(a) (2016) empower the Hawai'i Supreme Court to issue writs. Rivera v. Cataldo, 153 Hawai'i 320, 324, 537 P.3d 1167, 1171 (2023). HRS § 602-5(a)(3) gives this court original jurisdiction to consider writs directed to lower courts. Id. HRS § 602-5(a)(5) authorizes us to issue writs or orders to aid jurisdiction. Id.

More broadly, HRS § 602-5(a)(6) empowers this court to do justice. Id. This court may "make and award such judgments, decrees, orders and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are

20

or shall be given to it by law for the promotion of justice in matters pending before it."  HRS § 602-5(a)(6).

This court also has general supervisory powers to prevent and correct errors in our state's lower courts.  Rivera, 153 Hawai'i at 324, 537 P.3d at 1171.  "The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law."  HRS § 602-4 (2016).

Here, we exercise our authority to issue a writ of mandamus.  The circuit court had no discretion to act on the civil claims in the post-conviction proceeding, because under HRPP 40(c)(3) the only correct outcome was to transfer the civil claims to a new civil case.  We order the circuit court to quash the Schweitzers subpoena.  We also order the court to transfer the Schweitzers' joint petition for relief under HRS Chapter 661B to a new civil proceeding.

The new civil case must follow the procedures prescribed by HRCP Rule 26 and HRS § 661B-2.  The Schweitzers must serve the Department of the Attorney General (AG).  Their discovery request must wait until after the AG answers the petition.  Then, the parties should follow HRCP Rule 26's discovery procedures: a conference, a discovery plan, and initial disclosures.  The civil court should also take steps to protect

21

any constitutionally or statutorily protected information from disclosure.

The civil court should evaluate the Schweitzers' discovery request under HRCP Rule 26. Brady and UIPA are not relevant to the analysis: Brady applies to criminal defendants, and UIPA does not apply to civil litigation or create an exception to discovery.

We also clarify that there is no qualified law enforcement privilege in Hawai'i. This court's two cases recognizing that privilege, Mehau and Kaneshiro v. Au, 67 Haw. 442, 690 P.2d 1304 (1984), concerned a matter that predated the Hawai'i Rules of Evidence. HRE 501 has since abrogated the qualified privilege, leaving only HRE 510, the informant identity privilege, in its place.

Law enforcement agencies have an alternative remedy, though. They may seek a protective order per HRCP Rule 26(c) to ensure the appropriate confidentiality of sensitive information.

Last, we comment on the circuit court's timeline in this case. The court's extremely tight deadlines were not appropriate under the circumstances.

## A. The Circuit Court Should Not Have Compelled Civil Discovery in a Criminal Proceeding

We issue a writ of mandamus because the circuit court had no discretion to act on the civil claims in the post-conviction

proceeding.  Under HRPP Rule 40, the only correct outcome was to transfer the civil claims to a new civil case.

This court grants writs only in extraordinary circumstances.  Womble, 153 Hawai'i at 319, 537 P.3d at 1166. Exceeding jurisdiction, flagrantly and manifestly abusing discretion, and refusing to act when it has a legal duty to act are court actions and inaction that may constitute extraordinary circumstances to issue a writ.  Id.  This court has also granted a writ of mandamus when lower courts persistently misapplied discovery rules in excess of their jurisdiction.  State ex rel. Marsland v. Ames, 71 Haw. 304, 306, 788 P.2d 1281, 1283 (1990).

To obtain a writ, a petitioner must "demonstrate a clear and indisputable right to the relief requested and a lack of other means to redress adequately the alleged wrong or to obtain the requested action."  Womble, 153 Hawai'i at 319, 537 P.3d at 1166 (cleaned up).

Here, HPD has established a clear and indisputable right to the relief requested, and the appeal remedy is inadequate in the extraordinary circumstances raised by this case where HPD was compelled by the circuit court to disclose information related to a pending criminal investigation on an expedited basis.  See Brende v. Hara, 113 Hawai'i 424, 429, 153 P.3d 1109, 1114 (2007) (holding that petitioner was entitled to mandamus relief where the circuit court entered an order that allowed the release of

23

confidential information obtained in discovery).  Further, sometimes lower courts require immediate need of direction from this court on a procedural and substantive matter of public importance.  See Rivera, 153 Hawaiʻi at 325, 537 P.3d at 1172.

The parties and the circuit court confronted a blurry situation.  (This case preceded Jardine.)  Others too may have head-scratched over 661B.  Because no order "so states" that the Schweitzers were "actually innocent," Attorney General Lopez, in her February 2024 letter, opined that the Schweitzers did not meet HRS § 661B-1's precondition to begin a civil action for compensation.

The Schweitzers therefore reasonably believed that they needed to press on in the HRPP Rule 40 proceeding to obtain an "actual innocence" finding.  Only then could they begin their civil 661B claim.

But, adjudicating an extra finding of actual innocence for a 661B claim defies HRPP Rule 40(c)(3).  HRPP Rule 40 enables a convicted defendant to obtain relief from a criminal judgment or criminal custody.  HRPP 40(c)(3) says:

> (3) Separate Cause of Action.  If a post-conviction petition alleges neither illegality of judgment nor illegality of post-conviction "custody" or "restraint" but instead alleges a cause of action based on a civil rights statute or other separate cause of action, the court shall treat the pleading as a civil complaint not governed by this rule.  However, where a petition seeks relief of the nature provided by this rule and simultaneously pleads a separate claim or claims under a civil rights statute or other separate cause of action, the latter claim or claims

24

> shall be ordered transferred by the court for disposition under the civil rules.

Rule 40(c)(3) addresses two situations. The rule's first sentence says if a petitioner mistakenly files only a civil claim without including a claim for relief from a criminal judgment or custody, the court should consider the matter a civil case. Id. The second sentence says that if a petitioner files claims for both post-conviction criminal relief and civil remedies, then the court shall transfer the civil claims to a separate proceeding governed by the HRCP. Id.

Here, the Schweitzers' "Joint Petition for Relief Pursuant to HRS Chapter 661B" arises "under a civil rights statute or other separate cause of action," so it is a civil claim. See id. The circuit court – invoking criminal jurisdiction in the post-conviction relief proceeding – was required by HRPP 40(c)(3) to transfer the joint petition to a new civil proceeding.

We order the court to transfer the Schweitzers' joint petition for relief under HRS Chapter 661B to a new civil case. The transfer matters because Rule 40 proceedings are criminal and 661B proceedings are civil.

The Hawai'i Rules of Penal Procedure control the Schweitzers' post-conviction proceedings. Grindling v. State, 144 Hawai'i 444, 453, 445 P.3d 25, 34 (2019). In contrast, the

25

Schweitzers' Joint Petition for HRS Chapter 661B Relief is a civil matter against the State.  See HRS § 661B-1 (authorizing a wrongfully convicted person to seek "an award of damages against the State"); Jardine, 2024 WL 4314979, at *13 (explaining "in a HRS chapter 661B civil claim, the petitioner then has the burden to prove by a preponderance of the evidence that they are 'actually innocent of the crimes at issue'").  A Rule 40 proceeding, Jardine recognizes, occurs in criminal court, while a 661B proceeding happens in civil court: "Jardine's HRPP Rule 40 petition was adjudicated in criminal court using the McNulty standard . . . .  [I]n his HRS chapter 661B proceeding, Jardine must show by a preponderance of the evidence in civil court that he was actually innocent."  2024 WL 4314979, at *19.

Criminal and civil proceedings are governed by different procedural rules.  The HRPP guide criminal proceedings.  HRPP Rule 1(a).  The HRCP govern civil proceedings.  HRCP Rule 1(a).  Therefore, we clarify that the discovery the Schweitzers seek to support their joint petition must be handled under the civil rules, not the penal rules.

HPD has an indisputable right to relief.  We grant HPD a writ of mandamus.  We order the circuit court to quash the Schweitzers' subpoena in the Rule 40 case and transfer their petition to a new civil case.

**B.    The Court Must Transfer Discovery to the New Civil Court
       for It to Evaluate**

As part of our writ of mandamus, we order the court not to
release the discovery produced to it in the completed post-
conviction proceedings.  Any further determination on the
release of those records should come from the presiding judge in
the new civil case.  The circuit court should transfer the
discovery it holds to the new civil court judge (which may also
be Judge Kubota, sitting in his civil capacity).  The civil
court will decide whether documents should be returned to HPD or
produced and under what conditions or protections.

We provide some guidance about what should happen in the
civil proceeding.  As this court did in Kaneshiro, we exercise
our HRS § 602-4 powers because resolving the conflict between a
party's discovery rights and a law enforcement agency's desire
for confidentiality is of considerable public importance.
Kaneshiro, 67 Haw. at 446, 690 P.2d at 1308.  As in Kaneshiro,
we provide instructions to the circuit court.  Id.  We address
legal issues raised by the parties and those implicit in the
situation faced by a circuit court judge.  Id.

And, because HPD may continue to resist producing
information to the Schweitzers, we lay out a blueprint for how
the new civil court should evaluate the Schweitzers' discovery
request.

27

In the civil court, the Schweitzers' discovery demand must proceed under HRCP Rule 26 and HRS § 661B-2. Thus, the new civil judge may not release the materials until four things have happened.

First, the Schweitzers must serve the Department of the Attorney General. Second, their discovery request must wait until the AGs file an answer per HRS § 661B-2. Third, the parties must follow the conference, discovery plan, and disclosure steps required by HRCP Rule 26. Fourth, the court should take steps to protect any constitutionally or statutorily protected information from disclosure.

In the new civil case, the Schweitzers must serve the Department of the Attorney General. Under HRCP 4(a), "[u]pon the filing of the complaint the clerk shall forthwith issue a summons" directed to the defendant. In a Chapter 661B case, the defendant is the State of Hawai'i. So, service must follow HRCP 4(d)(4)'s and HRS § 661B-2(a)'s commands. HRCP 4(d)(4) says that service of process on the State is made by "delivering a copy of the summons and of the complaint" to the attorney general, the assistant attorney general, or their designee. HRS § 661B-2(a) provides, "[t]he petitioner shall serve the petition upon the attorney general, and if the prosecuting authority was other than the attorney general, upon the prosecuting authority."

Here, the Schweitzers' petition has not commenced correctly. In the new civil case, the Schweitzers must serve the Department of the Attorney General and the County of Hawai'i Office of the Prosecuting Attorney.

Second, discovery must wait until after the answer. HRS § 661B-2(b) requires the Attorney General to file "an answer that shall either admit that the petitioner is entitled to compensation or deny the petitioner's claim." If the Attorney General "denies that the petitioner is entitled to compensation, then the court shall conduct a trial to determine if the petitioner is entitled to compensation and the amount, if any." Id. If the Attorney General enters a complete denial, then liability and damages are both at issue. If the Attorney General concedes liability, "the court shall conduct a trial to determine the amount of compensation." Id. In this scenario, the relevant issues narrow to damages.

Discovery is only relevant when it relates to a party's claim or defense. HRCP Rule 26(b)(1)(A). The Schweitzers' requested discovery is only relevant so long as the Attorney General continues to deny the Schweitzers' entitlement to compensation. If the AG concedes that the Schweitzers are due compensation, there is no need for future discovery to prove that the Schweitzers are actually innocent - the civil case advances to the calculation of damages. Until the AG answers,

though, who knows whether further discovery is relevant. Relevance depends on the Attorney General's position.

Third, discovery should proceed under Rule 26's framework. A party in a civil case is generally prohibited from seeking discovery from any source before the parties confer at the discovery conference required by HRCP 26(f), produce a discovery plan per HRCP 26(f)(3), and release their initial disclosures per HRCP 26(a). HRCP Rule 26(d)(1) provides:

> (d) Timing and Sequence of Discovery.
>
> (1) Timing. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) of this Rule, except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) of this Rule, or when authorized by these rules, by stipulation, or by court order.

HRCP Rule 26(f) requires a discovery conference. It provides that the parties must generally confer "as soon as practicable." HRCP Rule 26(f)(1). The parties should arrange for their disclosures and develop a discovery plan. HRCP Rule 26(f)(2). Rule 26(f)(3) outlines the contents of a discovery plan. HRCP Rule 26(a) lists the items required in initial disclosures.

The Schweitzers sought civil discovery in the post-conviction proceeding. The circuit court erred by allowing the civil discovery in the criminal case and by allowing civil discovery outside the order provided by HRCP Rule 26. The new civil judge and the parties need to go through this process

30

before the court decides whether a motion to compel discovery is needed.

Fourth, the new civil judge must take appropriate steps to protect privileged and legally protected information.

The Hawai'i Constitution's right to privacy protects a non-party's medical information from discovery.  Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 138 Hawai'i 14, 20, 375 P.3d 1252, 1258 (2016).  It also protects a party's private medical information from public disclosure.  Brende, 113 Hawai'i at 426, 153 P.3d at 1111.  And, certain public records are protected by statute from public disclosure.  See, e.g., HRS § 338-18 (Supp. 2021) (protecting vital statistics records from disclosure).

On the current record, it is unclear whether any of these privileges or legal protections are at issue or apply.  The civil court should consider and take necessary steps to restrict the production or disclosure of protected information.  The civil court may decide to solicit briefing from the parties or from non-parties possessing protected information on these issues.

**C.  The Civil Court Should Consider Whether to Compel the Discovery Per HRCP Rule 26 Balancing**

**1.  Brady and UIPA Are Not Relevant**

Brady does not support or justify the circuit court's decision to allow discovery to proceed in the post-conviction

proceeding.  Brady requires prosecutors to turn over exculpatory evidence to criminal defendants.  It does not apply to civil proceedings like the Schweitzers' 661B compensation claim.  The court's order denying HPD's motion to quash, while referencing due process principles, does not rely on any Hawai'i or federal cases to extend Brady in this context.

As the Ninth Circuit reasoned:

> The extent to which Brady-like obligations extend to civil cases is an open question.  As the government acknowledges, Brady has been applied in the civil context when a substantial private interest is at stake, . . . or a civil matter is jointly investigated with a criminal prosecution . . . .  But courts have only in rare instances found Brady applicable in civil proceedings, . . . such as when a person's liberty is at stake.

Kashem v. Barr, 941 F.3d 358, 386-87 (9th Cir. 2019) (cleaned up).  Brady has been applied in some quasi-criminal contexts.  For instance, at least one state court has applied Brady-like obligations to civil forfeiture cases.  Foor v. Smith, 416 P.3d 858, 863 (Ariz. Ct. App. 2018).  But the Schweitzers' 661B case is not quasi-criminal, like these examples.  Ian and Shawn want monetary damages for a wrong they assert was done to them.  Their compensation case is like ordinary civil litigation.

On this point, we agree with HPD.  The Schweitzers are no longer criminal defendants and their 661B petition is a civil matter.  Brady is sidelined.  HRCP Rule 26 controls.

Hawai'i's Uniform Information Practices Act, HRS Chapter 92F is also inapplicable to civil discovery.  HRS § 92F-3 (2012)

32

exempts "nonadministrative functions of the courts of this State" from UIPA. UIPA does not create the equivalent of a discovery privilege to prevent disclosure of government records in a lawsuit.

In a civil lawsuit the HRCP control discovery of any matter, including government records. A party may obtain discovery of any relevant evidence that is not privileged. HRCP 26(b)(1)(A). Hawaiʻi law only recognizes evidentiary privileges spelled out in the Hawaiʻi Rules of Evidence (HRE) Rule 501, codified at HRS § 626-1 (2016). That rule reads:

> Rule 501. Privileges recognized only as provided
>
> Except as otherwise required by the Constitution of the United States, the Constitution of the State of Hawaiʻi, or provided by Act of Congress or Hawaiʻi statute, and except as provided in these rules or in other rules adopted by the Supreme Court of the State of Hawaiʻi, no person has a privilege to:
>
> (1) Refuse to be a witness; or
>
> (2) Refuse to disclose any matter; or
>
> (3) Refuse to produce any object or writing; or
>
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

HRS § 626-1, Rule 501.

There are only five sources of an evidentiary privilege in Hawaiʻi. The federal and Hawaiʻi Constitutions, federal and Hawaiʻi statutes (including the HRE), and Hawaiʻi court rules. Id. Rule 501's commentary explains that the rule "closely resembles" its California counterpart, and quotes the commentary

33

to California's rule: "privileges are not recognized in the absence of statute." However, unlike California, HRE 501 recognizes the authority of this court to adopt privileges by rule.

HRE 501 reflects an understanding that privileges run counter to the basic goal of discovery – uncovering the truth. See, e.g., DiCenzo v. Izawa, 68 Haw. 528, 534-35, 723 P.2d 171, 175 (1986).

Nowhere does HRS Chapter 92F provide for any evidentiary privilege. Accordingly, absent an evidentiary privilege, any relevant evidence must be produced to the requesting party, and exceptions in the UIPA are not valid grounds to object to otherwise relevant discovery sought by a party in a civil case.

Exceptions to disclosure under the UIPA do not double as exceptions to discovery. This court has held that statutes and regulations governing public disclosure have no bearing on the scope of discovery in civil litigation. See Tighe, 55 Haw. at 424, 520 P.2d at 1348. Exceptions under one scheme do not simply port to the other.

This separation mirrors the distinct interests that UIPA and the rules of discovery are designed to serve. Under UIPA, the public interest in disclosure is weighed against competing interests in nondisclosure. See, e.g., Peer News LLC v. City & Cnty. of Honolulu, 138 Hawai'i 53, 61, 376 P.3d 1, 9 (2016). But

under the HRCP, discovery is driven by the case's needs, taking into account the benefit and burden to each party. See HRCP Rule 26(b)(2)(iii). Here, the Schweitzers want to remedy injuries personal to them – it makes little sense to govern their discovery request according to UIPA.

We conclude that UIPA neither creates an evidentiary privilege nor applies to civil litigation. Therefore, it does not protect information from discovery under HRE 501 and HRCP Rule 26(b)(1)(A).

### 2. There Is No Qualified Law Enforcement Investigatory Privilege

"[T]here is no absolute privilege for police records that would insulate such records from discovery process under the H.R.C.P." Tighe, 55 Haw. at 428, 520 P.2d at 1351. Similarly, "[n]o absolute privilege insulates police records from discovery" in a criminal case. State v. Estrada, 69 Haw. 204, 216, 738 P.2d 812, 821 (1987). Tighe discussed the policy considerations at play:

> Public interest in preservation of confidentiality and secrecy may be sufficient reason for insulation of police or other governmental records from discovery in special, individual cases, but such claims of privilege for such records on this basis require documentation and argument by the governmental agency asserting the privilege, and subsequent judicial evaluation of the claim of privilege.

Tighe, 55 Haw. at 422, 520 P.2d at 1346-47.

Following Tighe and Mehau, this court recognized a "qualified privilege" for law enforcement investigatory

35

materials.  Kaneshiro, 67 Haw. at 446, 690 P.2d at 1308.  We clarify that HRE 501 abrogated this privilege.  For cases beginning after 1980, there is no qualified privilege.

Mehau repeated Tighe's statements that (a) there is no absolute law enforcement privilege (b) the public interest may support secrecy in special cases, and (c) claims for confidentiality require documentation and judicial evaluation.  Kaneshiro identified a conflict "between the right of parties to litigation to discover the facts through the production of documents not privileged from discovery, . . . and the legitimate concerns, of governmental agencies charged with the investigation of criminal activities, that the effectiveness of those investigations not be impeded."  67 Haw. at 446, 690 P.2d at 1308.  To address these concerns, Kaneshiro recognized a "qualified privilege" for law enforcement agencies to withhold their investigatory files.  Id.  Kaneshiro limited its reach to "the unique factual situation" it faced.  Id.

We clarify that this qualified privilege exists only for cases that began before 1981.  From 1981 forward, HRE 501 abrogated the common law qualified privilege that Mehau and Kaneshiro recognized.  The underlying proceedings in these two cases, which this court decided in 1983 and 1984 respectively, began before 1981.  Mehau, 66 Haw. at 141, 658 P.2d at 319; Kaneshiro, 67 Haw. at 445, 690 P.2d at 1307.  So, they were in

36

the pipeline of existing cases that could still be decided under the former evidentiary rules. See HRS § 626-2 (2016). But for cases post-1980, the HRE controls. See HRS § 626-3 (2016). As of 1981, there is no qualified privilege for law enforcement investigatory records in Hawai'i law.

The HRE took effect on January 1, 1981 and apply to all actions beginning after that day. HRS § 626-2. The Rules govern proceedings in our courts, with some exceptions not relevant here. HRE 101.

By adopting the HRE, the Hawai'i legislature "disclaimed all common law privileges that were not codified by statute." Peer News, 143 Hawai'i 472, 484 n.20, 431 P.3d 1245, 1257 n.20 (2018). That includes Kaneshiro's qualified privilege.

The HRE recognizes only one privilege related to law enforcement agencies. HRE 510 establishes an identity of informant privilege. HRE 510(a) provides a privilege for government agencies "to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation." This privilege is narrow. HRE 510(c) provides three exceptions, including when the informant may give testimony relevant to a material issue in the case.

Rule 510 does not imply a general investigatory privilege. The rule applies only to "the identity of a person" and not investigatory materials generally. Id. Its tight scope matches the common law privilege it codified, which protects a specific law enforcement interest: the effective use of informers. See McCray v. Illinois, 386 U.S. 300, 307 (1967). The specificity of its text and its common law ancestor, counsel against extending HRE 510's reach. HRE 510's slimness suggests the legislature took a narrower view of law enforcement privilege than Kaneshiro did. HRE 501 and 510 signal that there is no qualified law enforcement privilege.

Because there is no privilege, law enforcement investigatory records are fully discoverable, subject to HRE 510. See HRCP Rule 26(b). But that doesn't mean they are unprotected. A party may request, and a judge shall consider, whether a protective order balances a party's right to discoverable information with a law enforcement agency's legitimate need for confidentiality in an ongoing investigation.

### 3. Courts May Use Protective Orders to Guard Confidential Law Enforcement Investigatory Information

HRCP Rule 26 provides the tools for a trial court to consider a law enforcement agency's legitimate interests. The lack of an investigatory privilege does not mean that discovery will be unconcerned with the interest in effective law

enforcement.  Per Rule 26(c), a trial court may issue a protective order to fulfill law enforcement needs.

The HRCP "reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged."  Mehau, 66 Haw. at 155, 658 P.2d at 326.  Rule 26(b) defines the scope of discovery.  It provides that, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."  HRCP Rule 26(b)(1)(A).

This broad discovery right is limited by the needs of the case.  A court may constrict discovery because it is cumulative, available elsewhere, or the burden of producing it outweighs its likely benefit, taking into account the needs of the case.  HRCP Rule 26(b)(2).  Rule 26 requires "balanc[ing] the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled."  See Brende, 113 Hawai'i at 431, 153 P.3d at 1116 (balancing interests).  Effective law enforcement is one interest the trial court should consider in its balancing.

By way of a protective order, a trial court has broad discretionary powers to balance discovery interests and protect

confidential information.  HRCP Rule 26(c), "Protective Orders" allows the trial court, upon a motion, to:

> [M]ake any order justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) **that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place**; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or **that the scope of the disclosure or discovery be limited to certain matters**; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition, after being sealed, be opened only by order of the court; (7) **that** a trade secret or **other confidential** research, development, or commercial **information not be revealed or be revealed only in a designated way**; and (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

HRCP Rule 26(c) (emphases added).  Rule 26 provides judges flexibility to craft an appropriate solution for each case.  In camera review is another appropriate tool.  Estrada, 69 Haw. at 216, 738 P.2d at 821.  As is a privilege log-type document.  See Kaneshiro, 67 Haw. at 449, 690 P.2d at 1310 (addressing indices or synopses).

Rule 26(c) guides which law enforcement interests get a spot on the discovery balancing scale.  It directs courts to limit discovery when necessary "to protect a *party or person* from annoyance, embarrassment, oppression, or undue burden or expense" (emphasis added).  Its primary concern is for harm to parties or others whose interests are at stake, not the public generally.

Applied to this case, the court should consider the Schweitzers' discovery rights against HPD's interests in completing this particular investigation. The circuit court should also consider the privacy interests of non-parties. See, e.g., Pac. Radiation Oncology, 138 Hawai'i at 20, 375 P.3d at 1258. But it may not consider a more generalized or conclusory law enforcement interest in confidentiality to prevent disclosure.

For instance, the general interest in maintaining the confidentiality of a police officer's internal disciplinary file is not sufficient to override a party's discovery rights. See Estrada, 69 Haw. at 217, 738 P.2d at 822. In Estrada, a defendant convicted of attempted murder for shooting a police officer appealed, in part, because the trial judge withheld the officer's internal disciplinary file from discovery. Id. at 206, 738 P.2d at 816. This court ruled that the incidents described in the file were relevant to the defendant's case. Id. at 217, 738 P.2d at 822. So, this court summarized the file's contents and directed the trial judge to produce the entire file to both parties. Id.

A party seeking a protective order must advance specific facts and compelling reasons why protection is needed. Vague, imprecise, or boilerplate assertions are not enough.

What HPD has offered here will not do. HPD argued that the Schweitzers are not entitled to the release of records at this time because a release would "frustrate HPD's legitimate criminal investigative purpose and compromise the integrity of the open criminal investigation" in which the Schweitzers are still possible suspects. HPD worries, in a general way, that disclosure might lead to witness tampering and loss of evidence. At oral argument, the county prosecutors could not provide an estimate of when HPD would finish its investigation.

In the civil case, HPD will have the opportunity to request a protective order and augment its justifications for that order. If HPD does not provide additional specificity, a protective order is unwarranted. As this court has said, "[p]ublic interest in preservation of confidentiality and secrecy may be sufficient reason for insulation of police or other governmental records from discovery in special, individual cases, but such claims of privilege for such records on this basis require documentation and argument by the governmental agency asserting the privilege." Tighe, 55 Haw. at 422, 520 P.2d at 1346-47. If the ongoing investigation bars discovery of potentially exonerating evidence, the Schweitzers are stymied in pursuing their case. They may be denied the compensation Hawai'i's wrongful conviction compensation law promises.

The balance of a party's right to discoverable information and a law enforcement agency's needs will shift over time. Mehau, 66 Haw. at 156, 658 P.2d at 327. Mehau explained that the need to maintain law enforcement confidentiality is "seldom one of indefinite duration, for the underlying inquiry usually has a reasonable terminus." Id. (cleaned up). An investigation cannot go on forever, and a party cannot indefinitely wait to get documents related to its case. A law enforcement agency must articulate a reasonable time constraint on the duration of its proposed protective order. A judge must evaluate whether the proposed time frame adequately balances the parties' needs.

**D.    The Circuit Court's Timeline Was Too Short**

Last, we comment on the circuit court's timetable for this discovery dispute. For sure "trial courts have broad powers to control the litigation process before them." Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 75, 229 P.3d 1133, 1140 (2010).

But here, the circuit court's timeframe was overly compressed. The Schweitzers informed the court about Lauro's death on Friday, July 26, 2024. The court instructed the Schweitzers to file a motion to compel discovery and set a hearing on that motion for Tuesday, July 30. That gave the Schweitzers' counsel roughly 48, mostly-weekend hours, until Sunday, July 28, to file the motion. Then, the County had only one day to respond.

43

At the July 30 hearing, the court invited the Schweitzers to submit a subpoena duces tecum due in two days, on August 1. This gave HPD and CHOPA only 48 hours to collect and review the requested materials.  It gave the County's lawyers only two days to file a motion to quash.  The County filed a motion to quash on August 1.  It filed a second motion to quash the next day, in anticipation of an August 5 hearing.

We fail to see the reason for the circuit court's breakneck pace.  Unlike the earlier petition for post-conviction relief – which released Ian from custody – the Schweitzers' discovery request was only pertinent to their civil claim.  While we appreciate the circuit court's commitment to a prompt resolution, the rush was unnecessary under the circumstances.

Although circuit courts have broad discretion to control the litigation process, a court should hesitate before ordering very short deadlines on matters and motions raising major issues.  A slightly longer timeframe in this case would have made things more manageable for the attorneys and law enforcement, and allowed more time for the presentation of important issues.  The timelines the circuit court set in this case between July 26 and August 1 were unreasonable.

**IV.**

Petitioners must pursue their HRS Chapter 661B claims as a separate civil case, and not within a HRPP Rule 40 post-conviction proceeding.

We order the circuit court to quash the subpoena in the Rule 40 case and transfer the Schweitzers' HRS Chapter 661B petition to a new civil case. The circuit court is directed to vacate: (1) As to 3CSP-23-0000003, the "Court Order Denying Hawai'i Police Department's Motion to Quash Subpoena Duces Tecum, Filed on August 2, 2024," filed on August 15, 2024; and, the "Order Granting Motion to Compel Discovery Re: Joint Petition for Relief Pursuant to HRS Chapter 661B," filed on August 1, 2024; (2) as to 3CSP-23-0000017, the "Court Order Denying Hawai'i Police Department's Motion to Quash Subpoena Duces Tecum, Filed on August 2, 2024," filed on August 15, 2024; and, the "Order Granting Motion to Compel Discovery Re: Joint Petition for Relief Pursuant to HRS Chapter 661B" filed on August 1, 2024.

The circuit court is further ordered to transfer the Joint Petition for Relief Pursuant to HRS Chapter 661B filed in 3CSP-23-0000003 and 3CSP-23-0000017 to a new civil case. The court may not release the discovery in the completed post-conviction proceedings, and any further determination on the release of such records should be made by the presiding judge in the new civil case. The circuit court shall also transfer all produced

45

material held in its possession to this new civil case for future decision on whether that discovery should be returned to HPD, produced to the Schweitzers under protective conditions, or produced to the Schweitzers and made available publicly.

E. Britt Bailey
for petitioner

Jennifer L. Brown, L. Richard
Fried, Jr., and William Harrison
for respondent Albert Ian
Schweitzer

Keith S. Shigetomi
for respondent Shawn Schweitzer

Shannon M. Kagawa
for respondent State of Hawai'i

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens

